# EXHIBIT "A"

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
Jennifer Tomasino, Kevin Montano, Richard Meyer,
Apryl L. Meyer

                          Plaintiff/Petitioner,

          -against-                                    Index No. 602780/2028

Incorporated Village of Islandia, Board of Trustees of the
Incorporated Village of Islandia, Gerald

                          Defendant/Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### NOTICE OF COMMENCEMENT OF ACTION SUBJECT
### TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above has been commenced as an electronically
filed case in the New York State Courts Electronic Filing System ("NYSCEF") as required by CPLR
§ 2111 and Uniform Rule § 202.5-bb (mandatory electronic filing). This notice is being served as
required by that rule.

NYSCEF is designed for the electronic filing of documents with the County Clerk and the court
and for the electronic service of those documents, court documents, and court notices upon
counsel and unrepresented litigants who have consented to electronic filing.

Electronic filing offers significant benefits for attorneys and litigants, permitting papers to be
filed with the County Clerk and the court and served on other parties simply, conveniently, and
quickly. NYSCEF case documents are filed with the County Clerk and the court by filing on the
NYSCEF Website, which can be done at any time of the day or night on any day of the week. The
documents are served automatically on all consenting e-filers as soon as the document is
uploaded to the website, which sends out an immediate email notification of the filing.

The NYSCEF System charges no fees for filing, serving, or viewing the electronic case record, nor
does it charge any fees to print any filed documents. Normal filing fees must be paid, but this
can be done on-line.

**Parties represented by an attorney:** An attorney representing a party who is served with this
notice must either: 1) immediately record his or her representation within the e-filed matter on
the NYSCEF site; or 2) file the Notice of Opt-Out form with the clerk of the court where this action
is pending. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith
that they lack the computer hardware and/or scanner and/or internet connection or that they
lack (along with all employees subject to their direction) the operational knowledge to comply
with e-filing requirements. [Section 202.5-bb(e)]

**Parties not represented by an attorney: Unrepresented litigants are exempt from
efiling. They can serve and file documents in paper form and must be served with
documents in paper form.** However, an unrepresented litigant may participate in efiling.

For information on how to participate in e-filing, unrepresented litigants should contact the appropriate clerk in the court where the action was filed or visit www.nycourts.gov/efileunrepresented. Unrepresented litigants also are encouraged to visit www.nycourthelp.gov or contact the Help Center in the court where the action was filed. An unrepresented litigant who consents to e-filing may cease participation at any time. However, the other parties may continue to e-file their court documents in the case.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov).

Dated: 02/12/2018

Signature

ANTON J. BOROVINA
Name

_____
Firm Name

225 broadhollow rd. ste. 303
Address

Melville, NY  11747
City, State, and Zip

631-630-1101
Phone

ajb@borovinalaw.com
E-Mail

To:

9/3/15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

-------------------------------------------------------------------------)(

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER AND APRYL MEYER,

                                  Plaintiffs,

           -against-

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF ISLANDIA, GERALD PETERS, in his
capacity as Incorporated Village of Islandia Building
Inspector and DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, a/k/a DELAWARE NORTH,

                                  Defendants.

-------------------------------------------------------------------------)(

Date Filed: 2.12.18

Index No.: 602780/2028

SUMMONS

To the above named defendants:

YOU ARE HEREBY SUMMONED and required to appear in the Supreme Court of the County
of Suffolk, 1 Court Street, Riverhead, County of Suffolk, State of New York, by serving an
answer to the annexed complaint upon plaintiffs' attorney, at the address stated below, within the
time provided by law as noted below; upon your failure to answer, judgment will be taken
against you.

Statement and nature of substance of plaintiffs' cause of action: declaratory judgment declaring
Zoning Amendment unlawfully adopted, null and void and permanent injunction.

Dated: February 12, 2018
       Melville, New York

LAW OFFICE OF ANTON J. BOROVINA

By: _____
      Anton J. Borovina
225 Broad Hollow Road, Ste. 303
Melville, New York 11747
Telephone:   (631) 630-1101
Email:       ajb@borovinalaw.com

           -and-

Paul Sabatino II
1617 New York Ave.
Huntington Station, New York 11746
Attorneys for Plaintiffs

NOTE: The law or rules of law provide that:

(a) If the summons is served by its delivery to you, or (for a corporation) an agent authorized to receive service, personally within the County of Suffolk you must answer within 20 days after such service;

(b) If this summons is served otherwise than as designated in subdivision (a) above, you are allowed 30 days to answer after the proof of service is filed with the Clerk of this Court.

(c) You are required to file a copy of your answer together with proof of service with the clerk of the district in which the action is brought within ten days of the service of the answer.

Defendants' Addresses:

Delaware North Islandia Properties, LLC    Inc. Village of Islandia, NY
3635 Express Drive North                   Village Hall
Islandia, New York 11749                   1100 Old Nichols Road
                                           Islandia, NY 11749

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

------------------------------------------------------------------------)(

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER AND APRYL MEYER,

                                        Plaintiffs,

            -against-

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF ISLANDIA, GERALD PETERS, in his
capacity as Incorporated Village of Islandia Building
Inspector and DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, a/k/a DELAWARE NORTH,

                                        Defendants.

------------------------------------------------------------------------)(

Index No.: 602780/2028

**VERIFIED
COMPLAINT**

            Jennifer Tomasino, Kevin Montano, Richard Meyer and Apryl Meyer

(collectively, "Plaintiffs"), by their attorneys, Anton J. Borovina and Paul Sabatino II,

respectfully allege as and for their complaint as follows:

### THE PARTIES

1.      Plaintiff, Jennifer Tomasino , is a resident of the Incorporated Village of Islandia,

County of Suffolk, NY ("Village") residing at 4 Dawson Court, Islandia, NY 11749.

2.      Plaintiff, Kevin Montano, is a resident of the Village residing at 4 Dawson Court,

Islandia, NY 11749.

3.      Plaintiff, Richard Meyer, is a resident of the Village residing at 1 Dawson Court,

Islandia, NY 11749.

4.      Plaintiff, Apryl Meyer, is a resident of the Village residing at 1 Dawson Court,

Islandia, NY 11749.

5.      Plaintiffs are owners of real properties located within the territorial jurisdiction of the Village that are assessed in an amount greater than one thousand dollars for which they are liable to pay taxes to the Village based upon said assessments.

6.      Defendant, Village, is a municipal corporation and political subdivision of the State of New York.

7.      Defendant, the Board of Trustees of the Incorporated Village of Islandia ("Village Board"), is the local legislative body of the Village.

8.      Defendant, Gerard Peters ("Peters"), is Village Building Inspector.

9.      Upon information and belief, defendant, Delaware North Islandia Properties, LLC, is an affiliate of Delaware North (collectively, "Delaware North") and a privately held foreign limited liability company organized under the laws of the State of Delaware having its principal place of business located at 3635 Express Drive North, Islandia, New York 11749 ("Premises").

10.      Upon information and belief, Delaware North is primarily engaged in the business of providing, among other things, hospitality, food service and gaming and derives or keeps intending to derive substantial business revenue and profits by the undertaking of such business activities.

### THE FACTS

11.      In November, 1994, the Village Board approved and adopted a zoning master plan entitled "Comprehensive Plan for the Village of Islandia, Suffolk County, New York" applicable to all lands located within the territorial jurisdiction of the Village ("Master Plan").

12.      In adopting the Master Plan, the Village intended to adopt and amend its zoning laws in a manner that conforms to and is consistent with the recommendations and policy-oriented, long-range goals set forth in that plan.

2

13.       In adopting the Master Plan, the Village committed, among other things, to disaggregate then existing zoning designations into more specialized zones and to create new zoning districts and district boundaries that had no precedent in the Village's then existing zoning code.

14.       Among other things, the Master Plan called for the establishment of a new district, ultimately to be known as the office/industrial district ("OID"), to permit offices uses and accessory facilities designed to service office uses and hotels with the latter being a permitted use by special exception approved by the Village Board.

15.       The Master Plan permitted no hotel within the OID to have multiple uses.

16.       Acting in furtherance of and consistent with the Master Plan, the Village Board adopted Article X of Chapter 177 of the Village Code, §§ 177-71 *et seq.* including the companion table of use regulations ("OID Table") which prescribed permitted and non-permitted office and industrial uses of land located within the OID.

17.       Among other things, the OID Table permitted lands located within the OID to be used as a hotel only if such use has been approved by special permit issued by the Village Board after a public hearing.

18.       Acting in furtherance of and consistent with the policies and goals set forth in the Master Plan and among other things, the Village Board included within Chapter 177 of the Village Code a provision prohibiting a gaming use of any land located within the OID.

19.       In 1989, the Village Board approved the issuance of a special permit ("Hotel Special Permit") authorizing Columbia Properties Islandia LP, the then owner of a 7.88±-acre parcel of land situated at 3635 Express Drive North, Islandia, NY 11749 having SCTM# 504-8-2-58.2 ("Premises") to construct and operate a hotel as a permitted use ("Hotel").

20.         Upon information and belief, Delaware North is the present owner of the Premises and the Hotel and the successor in interest to the rights and privileges conferred by the Hotel Special Permit. .

21.         In or about mid-year 2016 and upon information and belief, representatives of Delaware North and the Village conspired amongst themselves to formulate a plan and scheme to enter into a contract whereby the Village would agree to permit Delaware North or its existing or yet to be created affiliates (collectively, "Delaware North") to use the Hotel as a video lottery terminal ("VLT") facility in exchange for Delaware North agreeing to make substantial annual payments to the Village ("Payments").

22.         On March 28, 2016 and acting in furtherance of that plan, scheme and contractual arrangement, Delaware North applied to the Village Board for a special permit authorizing the construction and use of a VLT gaming facility, including, among other things, an off-track-betting ("OTB") simulcast facility as an accessory use of the Hotel ("OTB Application").

23.         At all relevant times, the Village and Delaware North understood and agreed that Delaware North would contractually commit to make the Payments to the Village on condition that the Village permits the Hotel to be used in the manner set forth and described in the OTB Application.

24.         Delaware North did intend its tender of the Payments to be a gift to the Village.

25.         The Village determined to accept such Payments in exchange for its approval of the OTB Application and as a means to balance its operating budget.

26.         The Village regarded its contemplated receipt of the Payments as an exchange for its agreement to permit the Hotel to be used in the manner set forth and described in the OTB Application.

27.     The Village did not regard its receipt of the Payments to be a gift from Delaware North.

28.     On August 12, 2016 and acting in furtherance of that plan, scheme and contractual arrangement, the Village Board approved the OTB Application and issued a special permit authorizing Delaware North to use the Premises in the manner described in the OTB Application ("VLT Special Permit").

29.     As a result of the determination made on August 12, 2016, the Premises had a multi-purpose use as a hotel and a gaming facility.

30.     On August 16, 2016 Delaware North and the Village memorialized their agreement regarding the Village's commitment to approve the OTB Application in exchange for Delaware North's commitment to make the Payments by their entering into a written agreement entitled "The Taxpayer Relief Agreement Between the Village of Islandia and Delaware North Islandia Properties, LLC" ("Agreement").

31.     A true and accurate copy of the Agreement is annexed to this complaint as exhibit "A" and is incorporated by reference as if more fully set forth herein.

32.     Delaware North has made and intends to continue to make the Payments in compliance with its contractual obligations set forth in the Agreement.

33.     On September 13, 2016, Tomasino, Meyer and others commenced an Article 78 proceeding in the Supreme Court, Suffolk County captioned, *Tomasino et al. v. The Board of Trustees of the Incorporated Village of Islandia et al*, Index No. 2016-8907, to set aside and vacate the Village's approval of the OTB Application and issuance of the VLT Special Permit ("Article 78 Proceeding").

34.     In a decision and order dated September 7, 2017 and filed in the office of the Suffolk

County Clerk on September 15, 2017, the Supreme Court, Hon. William G. Ford, J.S.C. presiding, issued an order which, among other things, vacated, set aside and annulled the Village's approval of the OTB Application and its issuance of the VLT Special Permit ("Order").

35.        A copy of the Order is annexed as exhibit "B".

36.        Subsequent to the Supreme Court's issuance of the Order, the Village and Delaware North commenced negotiations to amend or modify the Agreement for purposes of preserving the parties' original intent and mutual obligation whereby Delaware North would continue to honor its commitment to make the Payments to the Village provided that the Village has taken whatever action required to amend the Village Code in order to permit the Hotel to be used in the manner set forth and described in the OTB Application  and notwithstanding anything the Court said or held when it decided the Article 78 Proceeding.

37.        Subsequent to the Supreme Court's issuance of the Order, Delaware North and the Village amended the Agreement whereby Delaware North re-affirmed its commitment to make the Payments prescribed in the Agreement provided that the Village Board has amended Article X of Chapter 177 of the Village Code in a manner that would make the uses set forth and described in the OTB Application a lawfully permitted use of the Hotel.

38.        Acting in furtherance of the Agreement, as amended, on November 28, 2017, the Village Board adopted Local law No. 3-2017 amending Article X of Chapter 177 of the Village Code in order to make the uses set forth and described in the OTB Application a permitted use of the Hotel ("Zoning Amendment").

39.        The Zoning Amendment was subsequently filed in the Office of the Secretary of State on November 29, 2017.

40.      A true and accurate copy of the Zoning Amendment is annexed to the complaint as exhibit "C".

41.      On January 12, 2018 and acting pursuant to the Zoning Amendment, Peters issued a certificate of occupancy authorizing the use and occupancy of the Premises that mirrored in all material respects the uses permitted by the VLT Special Permit. ("Certificate of Occupancy").

42.      A true and accurate copy of the Certificate of Occupancy is annexed to the complaint as exhibit "D".

### AS AND FOR A FIRST CAUSE OF ACTION, PLAINTIFFS ALLEGE:
(Unlawful Zoning by Contract)

43.      Plaintiffs repeat and re-allege the allegations in paragraphs "1" through "42" of the complaint with the same force and effect as if more fully alleged herein.

44.      The Village Board agreed to adopt and did adopt the Zoning Amendment based upon Delaware North having made prior representations and commitments to honor its obligations to make the Payments as prescribed by the aforesaid agreements.

45.      The Village committed itself to adopt and did adopt the Zoning Amendment in order to obtain the benefit of its bargain contemplated by the aforesaid and scheme and in furtherance of the Agreement, as amended.

46.      Acting in furtherance of its obligations prescribed by the aforesaid agreements, Delaware North has made at least one Payment to the Village.

47.      Delaware North intends to make a Payment to the Village in February or March 2018 in performance of its obligations prescribed by the aforesaid agreements.

48.      Delaware North intends to keep making the Payments to the Village as *quid pro quo* exchange for the Village Board having adopted the Zoning Amendment and the Village Building Inspector's issuance of the Certificate of Occupancy.

49.     The Payments already made and to be made pursuant to the aforesaid agreements are unrelated to the purposes of zoning or to the uses of land and instead are intended to be a means by which the Village is able to use the funds in order to balance its annual budget based upon the success of Delaware North's business venture in using the Hotel as a VLT gaming facility.

50.     Based upon the foregoing, Plaintiffs are entitled to a judicial declaration that by adopting the Zoning Amendment, the Village has unlawfully bargained away and sold its zoning powers to Delaware North in violation of law and public policy.

51.     Based upon the foregoing, the Plaintiffs are entitled to a judicial declaration declaring the Zoning Amendment to be an unlawful and impermissible zoning by contract and of no force and effect and the Certificate of Occupancy declared to be null and void.

## AS AND FOR SECOND CAUSE OF ACION, PLAINTFFS ALLEGE:
### (Spot Zoning)

52.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 51 of the complaint with the same force and effect as if more fully alleged herein.

53.     On February 27, 2017, the New York Gaming Commission ("Gaming Commission") issued an operating certificate authorizing the Suffolk Regional Off Track Betting Corp. ("Suffolk OTB") to operate a video lottery gaming facility on the Premises ("Gaming License").

54.     A copy of the Gaming License is annexed as exhibit "E".

55.     At all relevant times, Delaware North and the Village knew that, under the gaming scheme prescribed by the State Constitution and State law, the Gaming Commission's issuance of the Gaming License automatically precluded its ability to issue another video lottery gaming

license to any gaming operator intending to do business in Suffolk County other than to the Suffolk OTB and at any location other than the Premises.

56.      By virtue of the Gaming Commission's issuance of the Gaming License, the Village Board's adoption of the Zoning Amendment made it legally impossible for and precluded any other parcel of land located anywhere else in Suffolk County, let alone within the territorial jurisdiction of the Village, to have a video lottery gaming use as a lawfully permitted use.

57.      The use permitted by the Zoning Amendment is unique and extraordinary in that nowhere else within the territorial jurisdiction of the Village, let alone within the OID, does there exist the kind of use that was approved by the Village Board when it adopted the Zoning Amendment and is an unprecedented use of any land located within the territorial jurisdiction of the Village.

58.      The use permitted by the Zoning Amendment is unique and extraordinary in that nowhere else within the territorial jurisdiction of the Village, let alone within the OID, may any land be used of the kind of use that was approved by the Village Board when it adopted the Zoning Amendment and is an unprecedented use of any land located within the territorial jurisdiction of the Village.

59.      The Village Board undertook no required analysis and made no requisite findings to determine if and to what extent the use being permitted by the Zoning Amendment is consistent and compatible with the policies and goals set forth in the Master Plan.

60.      The Zoning Amendment is contrary to and inconsistent with the policies and goals set forth in the Master Plan.

61.      The Zoning Amendment was not adopted in conformance with the Master Plan.

62.      The Zoning Amendment allows a use of land within the OID that is incompatible with the uses described in the master Plan and neighboring uses, including those of the Plaintiffs

and harmful to the Plaintiffs general welfare and those of others in the OID and throughout the territorial jurisdiction of the Village

63.        The Village's adoption of the Zoning Amendment constitutes a discriminatory treatment benefitting a single landowner, viz., Delaware North.

64.        As a result of the foregoing, Plaintiffs are entitled to a judicial declaration declaring the Zoning Amendment to be an unlawful spot zoning.

65.        As a result of the foregoing, Plaintiffs are entitled to a judicial declaration declaring the Zoning Amendment unlawfully adopted, null, void and of no force or effect.

66.        As a result of the foregoing, Plaintiffs are entitled to an injunction directing and enjoining Delaware North to discontinue, abate and remove the uses of the Premises that were granted pursuant to the Zoning Amendment and the Certificate of Occupancy and to restore the Premises to its pre-existing use and no other.

### AS AND FOR A THIRD CAUSE OF ACTION, PLAINTIFFS ALLEGE:
(Mandatory Referendum)

67.        Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 66 of the complaint with the same force and effect as if more fully alleged herein.

68.        The members of the Village Board are elective officers of the Village.

69.        The Zoning Amendment abolished the Village Board's discretionary power to approve the use of the Hotel located on the Premises in the manner described in the OTB Application.

70.        As a result of the Zoning Amendment, the proposed use of the Premises of the kind sought in the OTB Application became an as of right use subject only to the approval of the Village Building Inspector.

71.     The Zoning Amendment abolished or curtailed the power of the Village Board

once had to approve the accessory uses of hotels located within the OID.

72.     As a result of the foregoing, the Plaintiffs are entitled to a judicial declaration that

the Village Board failed to comply with the mandatory referendum requirements prescribed by

M.H.R.L. §23(2)(f) at the time it adopted the Zoning Amendment. .

73.     As a result of the foregoing, the Plaintiffs are entitled to a judicial declaration that

the Zoning Amendment was unlawfully adopted and is null and void and of no force or effect.

### AS AND FOR A FOURTH CAUSE OF ACTION, PLAINTIFFS ALLEGE:
(Certificate of Occupancy)

74.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 73 of the

complaint with the same force and effect as if more fully alleged herein.

75.     Peters issued the Certificate of Occupancy to Delaware North on an as of right

basis pursuant to the Zoning Amendment.

76.     Based upon the foregoing, Plaintiffs are entitled to an order vacating and

rescinding the Certificate of Occupancy and the abatement and removal of all uses that were

permitted pursuant to that certificate.

### AS AND FOR A FIFTH CAUSE OF ACION, PLAINTIFFS ALLEGE:
(Permanent Injunction)

77.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 77 of the

complaint with the same force and effect as if more fully alleged herein.

78.     Delaware North's use of the Premises is presently causing and effecting and,

unless abated, will continue to cause and effect a diminution in the value of Plaintiffs' properties.

79.     Delaware North's use of the Premises is presently causing and effecting and,

unless abated, will continue to cause and effect a directly related, local and more intense increase

in crime rates, prostitution, public intoxication, gambling and drug addiction and a diminution in the value of the plaintiffs' respective properties.

80.     Such increases in crime rates, prostitution, public intoxication, gambling and drug addiction and the diminution in the value of the Plaintiffs' respective properties are attributable to Delaware North's unlawful gaming use of the Premises and would not be occurring absent Delaware North's unlawful use of the Premises.

81.     Nevertheless, Delaware North has operated and is continuing to operate and maintain the Premises as an unlawful use of the Premises.

82.     Plaintiffs are suffering and will continue to suffer serious and irreparable injury unless Delaware North is permanently enjoined from continuing to use, operate and maintain the Gaming Use of the Premises and directed to discontinue, abate and remove its use of the Premises as a VLT gaming facility.

83.     For the above reasons, Plaintiffs are entitled to an injunction permanently enjoining Delaware North from using, operating or maintaining the Premises as a video lottery gaming facility, directing and mandating that it discontinue the gaming use of the Premises and to take down and remove all fixtures and things installed and used for purposes of promoting or maintaining the uses set forth and described in the OTB Application and to restore the Premises to its lawfully permitted use as a hotel in accordance with the Hotel Special Permit.

84.     Plaintiffs are jointly and severally aggrieved by the actions taken by Defendants.

85.     Plaintiffs have no other adequate remedy at law.

**WHEREFORE**, Plaintiffs request a judgment against the Defendants as follows:

    A.     On the First Cause of Action, a judgment declaring: i.) the rights of
        the parties, ii) the Zoning Amendment was adopted as an unlawful

12

zoning by contract and iii) the Zoning Amendment is null, void and of
no force and effect;

**B.**     On the Second Cause of Action, a judgment declaring: i.) the rights of
the parties, ii) the Zoning Amendment is an unlawful spot zoning and
*ultra vires* and iii) the Zoning Amendment is null and void and of no
force and effect;

**C.**     On the Third Cause of Action, a judgment declaring: i.) the rights of
the parties, ii) the Zoning Amendment was unlawfully adopted on
account of the Village Board's failure to comply with M.H.R.L.
§23(2)(f) and iii) the Zoning Amendment is null and void and of no
force and effect;

**D.**   On the Fourth Cause of Action, a judgment declaring the issuance of
the Certificate of Occupancy null and, void and of no force and effect
and ii)vacating the issuance of the Certificate of Occupancy;

**E.**     On the Fifth Cause of Action, a judgment i.) permanently enjoining
Delaware North from using, operating or maintaining the Premises as a
video lottery gaming facility, ii.) directing and mandating Delaware
North to discontinue the gaming use of the Hotel, iii.) directing and
mandating Delaware North to take down and remove forthwith from the
Premises all fixtures and things installed and used for purposes of
promoting or maintaining the uses set forth and described in the OTB
Application and iv.) directing Delaware North  to restore the Hotel and

Premises to its lawfully permitted use as a hotel in accordance with the

Hotel Special Permit;

F.      On all causes of action, costs and disbursements.

Dated: February 12, 2018
      Melville, New York

                           Law Office of Anton J. Borovina

                           By: _____
                                Anton J. Borovina

                           225 Broad Hollow Road, Ste. 303
                           Melville, New York 11747
                           (631) 630-1101

                                 -and-

                           Paul Sabatino II
                           1617 New York Ave.
                           Huntington Station, New York 11746

                           Attorneys for Plaintiffs

**VERIFICATION**

STATE OF NEW YORK)

)ss.:

COUNTY OF SUFFOLK)

Jennifer Tomasino, being sworn, deposes and says:

I am a plaintiff in the within action; I have read the foregoing COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

JENNIFER TOMASINO

Sworn to before me this
12th day of February 2018.

Notary Public

Anton J. Borovina
Notary Public, State of New York
No. 02BO6355545
Qualified in Nassau County
Commission Expires March 17, 202

# EXHIBIT "A"

COPY

*received 6/25/16*
*day of*
*FOIL*
*Request*

# TAXPAYER RELIEF AGREEMENT

2016 AUG 16  P 2: 54

## BETWEEN THE

## VILLAGE OF ISLANDIA AND

## DELAWARE NORTH ISLANDIA PROPERTIES, LLC

THIS AGREEMENT (the "Agreement"), made this 16th day of August, 2016, by and

between the VILLAGE OF ISLANDIA, a municipal corporation with offices located at 1100

Old Nicholas Road, Islandia, New York 11749 (the "Village") and DELAWARE NORTH

ISLANDIA PROPERTIES, LLC, a limited liability company formed and existing under the laws

of the State of Delaware, with offices located at 250 Delaware Avenue, Buffalo, New York

14202, (the "Owner or Applicant"), and together with the Village hereinafter collectively

referred to as the "Parties").

WHEREAS, on or about March 28, 2016, an Affiliate (as defined below) of Owner,

Delaware North Companies Parks & Resorts, Inc., as the applicant, applied to the Village for a

special permit for an accessory use to permit an indoor amusement establishment with video

lottery terminals (the "VLT Facility"), an OTB simulcast facility, food and beverage locations

and back of house support areas (the "Application") for the real property located at 3635 Express

Drive North, Islandia, New York, SCTM No. 05048-2-58.2 (the "Premises"). The Premises is

currently zoned, approved for operation as a hotel and operated as the Islandia Marriott Long

Island Hotel; and

WHEREAS, on July 1, 2016 Owner, as assignee of and successor in interest to Delaware

North Companies Parks & Resorts, Inc. amended and revised the Application to reflect that

Owner was the applicant and filed the revised Application with the Village;

WHEREAS, the Board of Trustees of the Village of Islandia (the "Village Board"), in its capacity as the lead agency for purposes of compliance with the requirements of the State Environmental Quality Review Act as set forth in Article 8 of the Environmental Conservation Law and its implementing regulations at 6 NYCRR Part 617 (collectively "SEQRA") has reviewed: (i) the Application (as revised), (ii) the Full Environmental Assessment Form ("FEAF") Part 1, dated March 25, 2016, and last revised on July 15, 2016 prepared by VHB Engineering, Surveying and Landscape Architecture, P.C. ("VHB"), (iii) an Expanded Environmental Assessment and Traffic Impact Study, dated June 2016 and last revised July 15, 2016, prepared by VHB, (iv) the comments made by Cashin Associates, P.C., the Village's planning consultant and KLD Consultants, the Village's traffic consultant and the responses thereto provided by the Applicant's consultants; (v) the completion of FEAF Parts 2 and 3; and (vi) the comments from the Suffolk County Planning Commission from its August 3, 2016 meeting, and, after review of the foregoing, has determined that, if granted, the proposed action will not have any significant adverse impacts on the environment and, therefore, on August 12, 2016 issued a SEQRA Negative Declaration; and

WHEREAS, the Village Board deems it advisable and in the best interest of the Village and its residents for the Village and the Applicant to enter into a Taxpayer Relief Agreement which provides for a one-time payment to the Village for capital improvements and subsequent annual payments to the Village, the amount of which are determined based on Net Operational Revenues (as defined below in Section 3) generated in connection with the VLT Facility at the times described below while the Special Permit (as defined herein) is in effect (each subsequent payment is referred to herein as a "Taxpayer Relief Payment") to (i) promote community development in the Village, (ii) to offset the increase in the infrastructure, public safety and

emergency services cost of the Village incurred as a result of approving the Application and (iii) to reduce real property taxes of Village residents is in the best interests of the Village and its residents.

WHEREAS, by resolution dated August 12, 2016, the Board of Trustees of the Village ("Village Board") conditionally approved the application and granted a special permit (the "Special Permit"), subject to the Parties entering into this Taxpayer Relief Agreement and the Owner's compliance with all of the other conditions of the Special Permit (the "Resolution");

NOW, THEREFORE, the Village and the Owner, for and in consideration of the promises and agreements of the other party hereto, and for purposes of complying with the conditions of the Village Board's Resolution, granting approval of the Application and the issuance of the Special Permit, dated August 12, 2016, do hereby covenant and agree as follows:

1.      The Owner shall pay to the Village the amount of One Million Five Hundred Thirty Two Thousand Four Hundred Dollars ($1,532,400) to be used by the Village to pay for the construction and development by the Village of the ballfields and associated improvements at First Responders Park located on Old Nichols Road in the Village of Islandia (the "Park"). Said payment shall be made fifteen (15) days after the expiration of any applicable statute of limitations or rights of appeal deadlines which could challenge the issuance of the Special Permit or the operation of the VLT Facility and the OTB simulcast facility at the Premises, provided, however, that if there is a claim made during the applicable statute of limitations or appeals period, the payment shall be made on the first to occur of either: (a) fifteen (15) days after the issuance of a non-appealable final decision or judgment made by a court in connection with any litigation or administrative proceeding upholding the Special Permit and/or Owner's right to operate the VLT Facility and OTB simulcast facility at the Premises from within the existing

3

hotel or (b) the issuance by the Village of a certificate of occupancy for the Temporary Facility

or a Full Facility, whichever is earlier. "Temporary Facility" means the installation of between 1

and 949 video lottery terminals. "Temporary Facility Opening Date" means the date on which

between 1 and 949 video lottery machines are installed at the Premises and the Temporary

Facility is open to the general public. The "Full Facility" means the installation of between 950

and 1,000 video lottery terminals. The "Full Facility Opening Date" means the date on which

between 950 and 1,000 video lottery terminals are installed at the Premises and the VLT Facility

is open to the general public.

2.    The Owner shall pay to the Village the initial installment of the Taxpayer Relief

Payment in the amount of One Million Dollars ($1,000,000), fifteen (15) days after the

expiration of any applicable statute of limitations or rights of appeal deadlines which could

challenge the issuance of the Special Permit or the operation of the VLT Facility and the OTB

simulcast facility at the Premises, provided, however, that if there is a claim made during the

applicable statute of limitations or appeals period, the payment shall be made on the first to occur

of either: (a)  fifteen (15) days after the issuance of a non-appealable final decision or judgment

made by a court in connection with any litigation or administrative proceeding upholding the

Special Permit and/or Owner's right to operate the VLT Facility and OTB simulcast facility at

the Premises from within the existing hotel or (b) the issuance by the Village of a certificate of

occupancy for the Temporary Facility or a Full Facility.

3.    The following terms shall have the following meanings as used in this Agreement.

"Net Operational Revenues" means the total amount wagered on the video lottery machines at

the VLT Facility by patrons of the VLT Facility (excluding the amount of promotional non-cash

"free play" wagered by those patrons) reduced by the sum of all winnings and prizes paid to

4

players of the video lottery machines. "Subsequent Taxpayer Relief Date" shall mean the earlier

of the Temporary Facility Opening Date or (b) the Full Facility Opening Date. For purposes of

this Agreement an "Affiliate" of, or entity affiliated with, a specified entity, is a entity that

directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under

common control with, the entity specified; (provided however, that, for purposes of this

Agreement in no case will Suffolk Regional Off-Track Betting Corporation be considered to be

an Affiliate of the Owner).

    4.     On the first three anniversaries of the Subsequent Taxpayer Relief Date, the Owner

shall pay a Taxpayer Relief Payment in the amount of Two Million Dollars ($2,000,000);

    5.     Commencing on the fourth anniversary of the Subsequent Taxpayer Relief Date

and on each anniversary thereafter during which the Special Permit is in full force and effect on

the same terms and conditions as on the date of original issuance and the Owner is the owner of

the Premises, the Owner shall make a Taxpayer Relief Payment of Two Million Two Hundred

Fifty Thousand Dollars ($2,250,000). In the event that none of the Owner or any Affiliate is any

longer the owner of the Premises, the Village agrees that only such non-Affiliated owner of the

Premises and not the Owner, shall be responsible for paying the Taxpayer Relief Payments.

    6.     The Owner, or its successor shall provide the Village with a detailed statement of

the Net Operational Revenues within fifteen (15) days after the end of each calendar year.

    7.     The Special Permit cannot be assigned without the Village's consent, which

consent shall not be unreasonably withheld; provided; however; that Owner shall be entitled to

assign the Special Permit to an Affiliate, without obtaining the Village's consent. The Special

Permit shall not be revoked in the event that Owner sells the Premises but, rather, shall be

transferred, upon the Village's consent which shall not be unreasonably withheld, to the

successor owner and the successor owner of the Premises, not the Owner, shall be responsible

for the payments required after Owner's sale of the Premises or the Village approved transfer

pursuant to this Agreement (except in the case of a transfer to an owner that is an Affiliate of the

Owner, in which case the Owner will remain responsible for making such payments).  Owner

shall only be required to make the Taxpayer Relief Payment for so long as the Special Permit is

in full force and effect on the same terms and conditions as on the date of original issuance and

only if Owner is the Owner of the Premises.

       8.    The Special Permit is conditioned on the compliance by the Owner or the Owner's

successor with this Agreement, and this Agreement being in full force and effect.  In the event

that the Owner, or a successor owner of the Premises fails to pay the required Taxpayer Relief

Payment in accordance with the terms and conditions of this Agreement, whether by default,

filing or assignment in bankruptcy or other event, and such failure is not cured within fifteen (15)

business days of written notice of such failure, then the Village Board may elect to terminate this

Agreement and revoke the Special Permit upon written notice to the Owner of its intent to

terminate the Agreement and following a public hearing.  In the event that this Agreement is

terminated, the Special Permit can only be revoked to the extent that it would then prohibit

operation of the VLT Facility and the OTB simulcast facility at the Premises and such

termination and/or revocation will not affect the operation of the hotel or the other services

(including but not limited to food and beverage services) offered at the Premises.

       9.    In the event that the Village receives state aid payments in connection with the

operation of the VLT Facility, the Village Board shall notify the Owner, in writing within five

(5) business days of notification of the award by the state and shall credit the entire amount of

state aid against the payment by the Owner of that year's (and subsequent years if the state aid is

for more than one year) against Owner's Taxpayer Relief Payment for such year or years. Nothing set forth in this Agreement shall prohibit the Owner and its Affiliates from actively attempting to procure state aid in connection with the VLT Facility.

10.      This Agreement may not be amended, modified or changed except by written agreement signed by the parties hereto.

11.      This Agreement shall be binding upon the parties hereto, and their successors and assigns.

12.      The Resolution authorized Mayor Allan M. Dorman to execute this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the 16th day of August, 2016.

VILLAGE OF ISLANDIA

By: _____
Allan M. Dorman, Mayor

DELAWARE NORTH ISLANDIA PROPERTIES, LLC

By: _____
E. Brian Hansberry, President

132891:7

7

ACKNOWLEDGEMENT OF PRINCIPAL OF DELAWARE NORTH ISLANDIA
PROPERTIES, LLC

STATE OF __N.Y._____ )

                                    )ss:

COUNTY OF _Suffolk_ )


On this _16_ day of _August_____, 20_16_, before me personally appeared
G._Brian Hansberry____ to me known and known to me to be the person described
and who executed the foregoing instrument and acknowledged that he executed the same.


PATRICIA DORMAN
NOTARY PUBLIC, State of New York
No. 01DO6177933
(SEAL)   Qualified In Suffolk County
Commission Expires November 19, 20 _19_

                                    _____
                                    Notary Public


ACKNOWLEDGEMENT OF VILLAGE


STATE OF NEW YORK


COUNTY OF SUFFOLK


On this _16_ day of _August_____, 20_16_, before me personally appeared
_Allan Dormer_____ to me known to be the person described as such in and who
as such executed the foregoing instrument and he acknowledged to me that he executed the same
as for purposes therein mentioned.


(SEAL)PATRICIA DORMAN
NOTARY PUBLIC, State of New York
No. 01DO6177933
Qualified In Suffolk County
Commission Expires November 19, 20 _19_

                                    _____
                                    Notary Public


8

EXHIBIT "B"

SHORT FORM ORDER

INDEX NO.: 08907/2016

## SUPREME COURT - STATE OF NEW YORK
## I.A.S. PART 38 - SUFFOLK COUNTY

*PRESENT:*

HON. WILLIAM G. FORD
JUSTICE SUPREME COURT

Motion Submit Date: 10/21/16
Motion Seq #:  001    Mot D

In the Matter of the Application of

JENNIFER TOMOSINO, NEIL MUNRO,
APRIL MEYER, FRAN PEKHOR, THE
CONCERNED CITIZENS OF SUFFOLK
COUNTY, INC., THE HAMLET AT
WINDWATCH GOLF & COUNTRY CLUB
HOME OWNERS, INC. & THE
RONKONKOMA CIVIC ASSOCIATION,

Petitioners,

For a Judgment Pursuant to CPLR Article 78
annulling and vacating certain resolutions
adopted by the Board of Trustees of the
Incorporated Village of Islandia on August 12,
2016 approving the application of Delaware
North Islandia Properties, LLC., for a special
permit regarding the permitted use of real
property and for other relief

-against-

THE BOARD OF TRUSTEES OF THE
INCOPORATED VILALGE OF ISLANDIA,
THE INCORPORATED VILLAGE OF
ISLANDIA, MICHAEL ZALESKI &
DELAWARE NORTH ISLANDIA
PROPERTIES, LLC.,

Respondents.

x

**PETITIONERS' COUNSEL:**
Anton J. Borovina, Esq.
425 Broad Hollow Road, Suite 203
Melville, NY  11747

Paul Sabatino, II., Esq.
1617 New York Avenue
Huntington Station, NY  11746

**RESPONDENTS' COUNSEL:**
Joseph W. Prokop, Esq.
267 Carleton Ave.
Central Islip, NY  11722

Farrell Fritz, PC
By: Anthony S. Guardino, Esq.
100 Motor Parkway, Suite 138
Hauppauge, NY  11788

1

Upon the following papers read on the Verified Petition pursuant to CPLR Article 78; Notice of Petition dated September 14 ,2016;Verified Petition dated September 13 ,2016; Memorandum of Law in Support dated September 14, 2016 and supporting papers; Affirmation in Opposition dated October 17, 2016; Memorandum of Law in Opposition dated October 17, 2016 and supporting papers; Certified Administrative Return dated October 17, 2016; Reply Affirmation dated October 26, 2016 and supporting papers; Reply Memorandum of Law dated October 26, 2016; (and after hearing counsel in support and opposed to the motion) it is,

ORDERED that the this special proceeding commenced by petitioner's Verified Petition pursuant to CPLR Article 78 seeking a determination vacating, annulling or otherwise setting aside certain resolutions adopted by respondent Board of Trustees of the Incorporated Village of Islandia on August 12, 2016 approving the application of Delaware North Islandia Properties, LLC., for a special permit regarding the permitted use of real property and for other assorted relief is GRANTED in part as thoroughly discussed below.

## BACKGROUND

In this article 78 proceeding, the petitioners challenge the adoption of certain resolutions by the Board of Trustees of the Incorporated Village of Islandia ("Village Board") and its issuance of a special permit relating to the construction and use of a video lottery gaming facility and an off-track betting (OTB) simulcast facility as an accessory use within the Islandia Marriott Long Island Hotel located at 3635 Express Drive North, Islandia, New York. The property is in the Village's Office and Industrial (OI) district, in which a hotel is a specially permitted use.

The petitioners, whose standing to maintain this proceeding is not seriously disputed,[1] claim to be persons aggrieved by the Village Board's actions, and include residents and owners of property within the Village. Respondent Michael Zaleski is a member of the Village Board. Respondent Delaware North Islandia Properties, LLC is the successor in interest of Delaware North Companies Parks and Resorts, Inc., the special permit applicant (collectively, "Delaware North").

## PROCEDURAL HISTORY

On March 28, 2016, Delaware North submitted an application to the Village Board seeking a special permit for an indoor amusement establishment with video lottery terminals (VLT's),[2] an OTB simulcast, food and beverage locations, and back of house support areas as an accessory use to the existing hotel. Over the next several months, as part of the application process and in conjunction with the Village Board's SEQRA review (see ECL Art. 8), Delaware North submitted a full environmental assessment form, an expanded environmental assessment and traffic impact

---

[1] Although the respondents, in their respective answers, do assert objections in point of law challenging the petitioners' standing to maintain this proceeding, they offer no factual or legal argument in support of their objection, and their joint memorandum of law is silent on the issue except for a blanket statement that the petition is "entirely devoid of factual allegations that would support a finding of standing for any of the Petitioners here"–a statement with which the court cannot agree.

[2] According to Anthony S. Guardino, Esq. of Farrell Fritz, P.C., Delaware North's land use counsel, VLTs are gaming machines that allow players to "bet on the outcome of a video game." Although they resemble slot machines, the results of each play are "pre-determined by a central computer at a NYS Lottery facility to which all VLTs in New York are connected"; as such, they are "essentially computerized * * * scratch-off lottery tickets."

2

study, and a revised expanded environmental assessment and traffic impact study; additionally, the application was forwarded by the Village Clerk to the Village's engineering and traffic consultants. On July 5, 2016, a public hearing was held, following which the application was referred for review to the Suffolk County Planning Commission, culminating in a resolution that the application was a matter for local determination.

On August 12, 2016, the Village Board issued two resolutions relative to Delaware North's application: the first, adopting a negative declaration for purposes of SEQRA, determining that the application is an unlisted action and that its approval will not have a significant negative environmental impact, and the second, granting the application. Both resolutions are supported by numerous pages of findings. As to the decision to grant a special permit, the Village Board noted, for example, that the peak hours of activity for the proposed use were similar to the peak hours of use for the existing hotel; that the proposed modifications to the existing building would not increase the building footprint; that the provision of a combination of self-park and valet spaces would accommodate the anticipated parking demand; that the proposed use would be complementary to and harmonious with the existing hotel use; that because certain public gathering spaces in the hotel, such as banquet and conference rooms, were to be modified and converted to accommodate the proposed use, thereby reducing the number of events held, any increase in visitation resulting from the proposed use would be at least partially offset by the reduction in events and functions held in meeting and banquet spaces; that given the similarity in peak usage hours for the existing hotel and the proposed use, together with the loss of traffic due to the conversion of public gathering areas, no significant traffic impacts would be anticipated; that existing water and sewer connections as well as police, fire, and emergency services provided for the hotel would also be adequate for the proposed use; that the surrounding area is developed similarly with office, commercial, and industrial uses, all proximate, like the hotel, to major transportation corridors such as the Long Island Expressway and Motor Parkway; that the location of the hotel, on the north service road of the Long Island Expressway, provides convenient access to the property while minimizing potential impacts to the Village's roadways; and that the proposed use is consistent with the existing hotel use and will not be detrimental to any of the surrounding uses. This proceeding followed.[3]

## DISCUSSION

The petitioners allege four separate causes of action (denominated as "causes of proceeding") for article 78 relief in the petition, all of which are to vacate and set aside the adoption of the resolutions and the issuance of the special permit. As their first cause of action, the petitioners plead that the proposed use of the property is not a permitted accessory use. As their second cause of action, they claim that the Village Board failed to satisfy its obligation under SEQRA to take a "hard look" at the potential impacts on traffic and roadways in the area. The petitioners allege as their third cause of action that Michael Zaleski, by accepting various appointments as a Village officer after being elected a trustee, effectively vacated his position as

---

[3] The court rejects as unsupportable the claim that the petitioners were required to appeal the issuance of the special permit to the Village's Zoning Board of Appeals before commencing this proceeding and that they failed, therefore, to exhaust their available administrative remedies.

trustee pursuant to Village Law § 3-300 (3), so that the votes of the Village Board on the subject resolutions are void for want of a second to the motions to adopt them; the petitioners also seek the entry of judgment declaring that his position as trustee became vacant as of the earliest date he accepted an appointment as a Village officer and that all subsequent actions taken by him as a trustee were and are unlawful, null, and void. As their fourth cause of action, the petitioners claim that the resolutions were not duly enacted and are of no force and effect because they were not made available or disclosed to the public prior to their adoption, in violation of the Open Meetings Law (Public Officers Law Art. 7).

In opposition to the petition, the respondents submit, *inter alia*, various affidavits, an attorney's affirmation, and a joint memorandum of law.

## STANDARD OF REVIEW

In a proceeding pursuant to CPLR Article 78 to review a determination of a zoning board and its interpretation of its zoning ordinance, the Court is mindful that the board is entitled to great deference, and its review is generally limited to ascertaining whether the action was illegal, arbitrary and capricious, or an abuse of discretion (*Matter of Bray v Town of Yorktown Zoning Bd. of Appeals*, 151 AD3d 720, 56 NYS3d 246, 247 [2d Dept 2017]). When the question raised is one of purely legal interpretation of statutory terms, deference to the zoning board of appeals is not required (*Matter of Mecox Bay Civic Assn., Inc. v Town of Southampton Zoning Bd. of Appeals*, 145 AD3d 725, 725, 43 NYS3d 111, 112 [2d Dept 2016]).

On review of the grant of a special use permit, the reviewing court will not substitute its judgment for that of the board unless it appears to be arbitrary, capricious, or illegal, or was not rationally based (*Matter of 31 Commerce St., LLC v Darden*, 50 AD3d 910, 911, 855 NYS2d 673, 674 [2d Dept 2008]; *accord Matter of Pell v Board of Educ.*, 34 NY2d 222, 356 NYS2d 833 [1974] [a court will generally not interfere with the determination of an administrative board unless the board's action is illegal, arbitrary and capricious, or an abuse of discretion]). When applying the "arbitrary and capricious" standard, a court looks only to whether the determination lacks a rational basis, that is, whether it was without sound basis in reason and without regard to the facts (*Matter of Halperin v City of New Rochelle*, 24 AD3d 768, 809 NYS2d 98 [2005]). A determination will be deemed rational so long as it has some objective factual basis, and so long as such a basis exists to support the board's findings and conclusions, a court may not substitute its judgment for that of the board (*Matter of Pell v Board of Educ., supra; Vergilis v Planning Bd. of Vil. of Fishkill*, 251 AD2d 506, 507, 674 NYS2d 717, 718 [2d Dept 1998] [the determination of the village planning officials in the affected community will be sustained if it has a rational basis and is supported by substantial evidence in the record]; *Caesire v City of White Plains Zoning Bd. of Appeals*, 87 AD3d 1135, 1137, 930 NYS2d 54, 57 [2d Dept 2011][a determination will not be deemed rational if it rests entirely on subjective considerations, such as general community opposition, and lacks an objective factual basis]).

Even assuming, for purposes of this determination, that the Village Board's votes were valid irrespective of whether Michael Zaleski may be found to have vacated his position as trustee prior to August 12, 2016 and that the Village Board complied with all the requirements of the Open Meetings Law, this court is unable to conclude that a rational basis exists to support the granting of

a special permit, because there is no evidence in the record to support a finding that a VLT gaming and OTB simulcast facility is a permitted accessory use in the OI district:

"Whether a proposed accessory use is clearly incidental to and customarily found in connection with the principal use depends on an analysis of the nature and character of the principal use of the land in question in relation to the accessory use, taking into consideration the over-all character of the particular area in question" (*Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.*, 91 NY2d 413, 420, 671 NYS2d 423, 426 [1998]).

Therefore, given the Court of Appeals' instruction, this Court's analysis must begin with chapter 177 of the Village of Islandia Code, which codifies the Village's zoning laws, the Court keeping in mind that "zoning codes, being in derogation of the common law ... [accordingly are] strictly construed against the enacting municipality in favor of the property owner" (*Matter of Mamaroneck Beach & Yacht Club, Inc. v Zoning Bd. of Appeals of Vil. of Mamaroneck*, 53 AD3d 494, 498, 862 NYS2d 81, 85 [2d Dept 2008]).

Chapter 177 sets forth in a table (Attachment 5) a list of uses permitted in the OI district, and provides that any uses not listed are prohibited. Among the uses listed are "accessory uses." Section 177-76 specifies that "accessory service uses," that is, those "intended to complement any of the permitted uses and * * * designated to be for the primary use of employees, visitors and/or clients of the office occupants," are among the accessory uses authorized by special permit in the OI district. Pursuant to section 177-76, such uses include "barber shop, beauty salon, draft service, quick reproduction service, cafeteria and/or coffee shop or snack bar, apothecary, communications facilities, recreational facilities for use by employees only and other such uses as determined by the Village Board to be in keeping with the spirit and letter of this section." According to the respondents, Delaware North's application was approved as an "accessory service use" under section 177-76, and satisfies all the relevant criteria for the issuance of special permits generally (§§ 177-109, 177-110) and accessory service uses in particular (§ 177-76 [E]).

Section 177-3 (B), however, defines an "accessory use," in part, as one that is "customarily incidental" to the principal use. Apart, then, from the various criteria in sections 177-76, 177-109, 177-110 cited by the respondents, it must appear that the proposed accessory use is also customarily—that is, usually, habitually, regularly—incidental to the existing use (*see Matter of 7-11 Tours Inc. v Board of Zoning Bd. of Appeals of Town of Smithtown* 90 AD2d 486, 454 NYS2d 477 [2d Dept 1982]; *Matter of LaVecchia v Board of Stds. & Appeals of City of N.Y*, 26 Misc 2d 39, 204 NYS2d 429 [Sup Ct, Bronx County 1960]).

Notably, the Village Board made no finding in that regard, nor have the respondents pointed to any evidence in the record upon which the Village Board might have based such a finding.

Into that vacuum the petitioners introduce the affidavit of Eric B. Lewis, who describes himself as "the Executive Managing Director and Practice Lead of the Hospitality and Gaming group within Cushman and Wakefield's Valuation and Advisory division," and as having spent "more than thirty years in the profession of valuing real estate throughout the United States, including New York, with a focus on hotels and related property types." His opinion, based on

5

review of 185 establishments in New York featuring OTB services and on his overall experience and knowledge of the hotel industry, is that "other than in gaming destinations like Las Vegas, Atlantic City and on Indian Reservations and a few scattered, isolated hotels, gaming facilities, including the [proposed use], are not customary and incidental uses of a hotel." He also concludes that there are "no hotels located on Long Island having any gaming facilities." The respondents, for their part, do not seriously question Lewis's expert credentials but rather criticize his analysis of the applicable data, noting no fewer than five examples in upstate New York of gaming facilities located within a hotel. They also acknowledge, however, that there are no hotels with gaming facilities on Long Island. ·

It appears, therefore, not only that the administrative record is devoid of evidence on which the Village Board could properly base a finding that a VLT gaming and OTB simulcast facility is "customarily incidental" to a hotel use in the OI district, but also that no such finding is possible; in so concluding, the court notes that the Village Board's resolution adopting a negative declaration pursuant to SEQRA is essentially rendered academic. Whatever the reason for the absence of local hotels with gaming facilities–and the respondents observe "that gaming facilities were, until 2013, prohibited on Long Island"–they are, in fact, absent. It is the fact and not the cause of their absence that is crucial. And while Delaware North would have the court expand to upstate New York and beyond the geographic parameters for determining what is customary within the meaning of the · Village's zoning laws, the court is unwilling to do so, zoning and land use regulations being chiefly a matter of local concern and interpretation. Local standards, of course, may change over time. Until then, Delaware North's attempt to shoehorn its application to fit the existing law regarding accessory uses is a bridge too far. It is thus for that very reason it cannot be said, as the respondents desire, that a gaming facility use within the preexisting structure and operation of a suburban Long Island hotel is so common, habitual, or well-established a practice as to be deemed "customary" or "incidental" to the ordinary operation of a hotel as to support granting of the permit (*Abn Rent A Car, Inc. v Zoning Bd. of Appeals of Vil. of Montebello*, 156 AD2d 323, 548 NYS2d 275 [2d Dept 1989]).

Accordingly, the petition is GRANTED to the extent it is for Article 78 relief. The petitioners' remaining claim for declaratory relief shall be converted into a plenary action for a declaratory judgment (*see* CPLR 103 [c]); it shall be severed and continued, with the notice of petition deemed the summons and the petition deemed the complaint, the parties designated as plaintiffs and defendants, and the caption amended accordingly.

Therefore, it is

ORDERED that the portion of this Order granting Article 78 relief is stayed on the Court's own motion pursuant to CPLR 2201 permitting any party to file and/or perfect an appeal of the same within 90 days, no later than December 8, 2017; and it is further

ORDERED that counsel for the petitioners is hereby directed to serve a copy of this decision and order with notice of entry upon counsel for the respondents forthwith; and it is further

ORDERED that counsel for the parties shall appear before this Court for a scheduling and status conference on October 5, 2017 at 10:00 AM to address that portion of this Order which severs and converts the declaratory judgement action.

The foregoing constitutes the decision and order of this Court.

Submit judgment on notice.

Dated: September 8, 2017
Riverhead, New York

WILLIAM G. FORD, J.S.C.

_____ FINAL DISPOSITION      X   NON-FINAL DISPOSITION

7

# EXHIBIT "C"

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM

INDEX NO. 621008/2017

NYSCEF DOC. NO. 23

RECEIVED NYSCEF: 01/16/2018

New York State Department of State
Division of Corporations, State Records and Uniform Commercial Code
One Commerce Plaza, 99 Washington Avenue
Albany, NY 12231-0001
www.dos.ny.gov

## Local Law Filing

(Use this form to file a local law with the Secretary of State.)

Text of law should be given as amended. Do not include matter being eliminated and do not use italics or underlining to indicate new matter.

☐ County  ☐ City  ☐ Town  ☒ Village
(Select one)

of Islandia

FILED
STATE RECORDS

NOV 29 2017

DEPARTMENT OF STATE

Local Law No.  3-2017  of the year 2017

A local law Amending Section 177-3 B. Definitions and Attachments 6 and 7 of Chapter 177 of the
(Insert Title)

Islandia Village Code to Provide for Hotel/Gaming Facility as a Permitted Use in the

Office/Industry District of the Village of Islandia and to Establish Parking Requirements

for the Hotel/Gaming Use.

Be It enacted by the  Board of Trustees  of the
(Name of Legislative Body)

☐ County  ☐ City  ☐ Town  ☒ Village
(Select one)

of  Islandia  as follows:

- SEE ATTACHED -

(If additional space is needed, attach pages the same size as this sheet, and number each.)

DOS-0239-f-l (Rev. 04/14)

Page 2 of 4

(Complete the certification in the paragraph that applies to the filing of this local law and strike out that which is not applicable.)

1. (Final adoption by local legislative body only.)
I hereby certify that the local law annexed hereto, designated as local law No. _____3-2017_____ of 2017 of the (County)(City)(Town)(Village) of Islandia _____ was duly passed by the Board of Trustees _____ on 11/28 _____ 2017 in accordance with the applicable (Name of Legislative Body)
provisions of law.

2. (Passage by local legislative body with approval, no disapproval or repassage after disapproval by the Elective Chief Executive Officer.)
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20 _____ of the (County)(City)(Town)(Village) of _____ on _____ 20 _____ and was (approved)(not approved) (Name of Legislative Body)
(repassed after disapproval) by the _____ and was deemed duly adopted (Elective Chief Executive Officer)
on _____ 20 _____ in accordance with the applicable provisions of law.

3. (Final adoption by referendum.)
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20 _____ of the (County)(City)(Town)(Village) of _____ on _____ 20 _____ and was (approved)(not approved) (Name of Legislative Body)
(repassed after disapproval) by the _____ on _____ 20 _____ (Elective Chief Executive Officer)
Such local law was submitted to the people by reason of a (mandatory)(permissive) referendum, and received the affirmative vote of a majority of the qualified electors voting thereon at the (general)(special)(annual) election held on _____ 20 _____ in accordance with the applicable provisions of law.

4. (Subject to permissive referendum and final adoption because no valid petition was filed requesting referendum.)
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20 _____ of the (County)(City)(Town)(Village) of _____ on _____ 20 _____ and was (approved)(not approved) (Name of Legislative Body)
(repassed after disapproval) by the _____ on _____ 20 _____ Such local (Elective Chief Executive Officer)
law was subject to permissive referendum and no valid petition requesting such referendum was filed as of _____ 20 _____ in accordance with the applicable provisions of law.

* Elective Chief Executive Officer means or includes the chief executive officer of a county elected on a county-wide basis or, if there be none, the chairperson of the county legislative body, the mayor of a city or village, or the supervisor of a town where such officer is vested with the power to approve or veto local laws or ordinances.

DOS-0239-f-l (Rev. 04/14)    Page 3 of 4

**FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM**

NYSCEF DOC. NO. 23

INDEX NO. 621008/2017

RECEIVED NYSCEF: 01/16/2018

5. (City local law concerning Charter revision proposed by petition.)
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20_____ of
the City of _____ having been submitted to referendum pursuant to the provisions of section (38)(37) of
the Municipal Home Rule Law, and having received the affirmative vote of a majority of the qualified electors of such city voting
thereon at the (special)(general) election held on _____ 20_____, became operative.

6. (County local law concerning adoption of Charter.)
I hereby certify that the local law annexed hereto, designated as local law No. _____ of 20_____ of
the County of _____ State of New York, having been submitted to the electors at the General Election of
November _____ 20_____, pursuant to subdivisions 5 and 7 of section 33 of the Municipal Home Rule Law, and having
received the affirmative vote of a majority of the qualified electors of the cities of said county as a unit and a majority of the
qualified electors of the towns of said county considered as a unit voting at said general election, became operative.

(If any other authorized form of final adoption has been followed, please provide an appropriate certification.)
I further certify that I have compared the preceding local law with the original on file in this office and that the same is a
correct transcript therefrom and of the whole of such original local law, and was finally adopted in the manner indicated in
paragraph _1_ above.

_____
Clerk of the county legislative body, City, Town or Village Clerk or
officer designated by local legislative body

(Seal)

Date: _11/28/2017_

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM
NYSCEF DOC. NO. 23

INDEX NO. 621008/2017
RECEIVED NYSCEF: 01/16/2018

LOCAL LAW NO. _3_ OF THE YEAR 2017

OF THE INCORPORATED VILLAGE OF ISLANDIA

A LOCAL LAW AMENDING SECTION 177-3 B. DEFINITIONS

AND ATTACHMENTS 5 AND 7 OF CHAPTER 177 OF THE

ISLANDIA VILLAGE CODE TO PROVIDE FOR HOTEL/GAMING FACILITY

AS A PERMITTED USE IN THE OFFICE/INDUSTRY DISTRICT OF THE

VILLAGE OF ISLANDIA AND TO ESTABLISH PARKING REQUIREMENTS

FOR THE HOTEL/GAMING FACILITY USE

BE IT HEREBY ENACTED by the Board of Trustees of the Incorporated Village of Islandia as follows:

Section 1.0    Enactment, Effective Date, Purpose and Intent and Findings.

Section 1.1.    Title

Section 1.2.    Enactment.

Section 1.3.    Effective Date.

Section 1.4.    Purpose and Intent of Local Law.

Section 1.5.    Findings

Section 2.0.    General Provisions

Section 2.1.    Amendments to Section 177-3 B. Definitions

Section 2.2.    Amendment to Chapter 177 Attachment 5 Office and Industrial Districts: Table of Use Regulations

Section 2.3.    Amendments to Chapter 177 Attachment 7 Village of Islandia: Parking Schedule

Section 3.0    Severability

Section 3.1    Severability

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM
NYSCEF DOC. NO. 23

INDEX NO. 621008/2017
RECEIVED NYSCEF: 01/16/2018

Section 1.0    Enactment, Effective Date, Purpose and Intent and Findings.

1.1.    Title

This Local Law shall be entitled, "Local Law No. ___ of 2017 A Local Law Amending Section 177-3 B: Definitions And Attachments 5 And 7 Of Chapter 177 Of The Islandia Village Code To Provide For Hotel/Gaming Facility As A Permitted Use In The Office/Industry District Of The Village Of Islandia And To Establish Parking Requirements For The Hotel/Gaming Facility Use."

1.2.    Enactment.

Pursuant to Municipal Home Rule Law, including without limitation Sections 10 and 20 thereof, and Section 177-123 of the Islandia Village Code (the "Code"), the Board of Trustees of Village of Islandia, County of Suffolk and State of New York ("Board of Trustees"), hereby enacts this Local Law.

1.3.    Effective Date. This Local Law shall take effect on the filing of this Local Law with the Secretary of State of the State of New York.

1.4.    Purpose and Intent of this Local Law.

The purpose and intent of the Local Law is to amend the definitions of Section 177-3 B. Definitions of the Code by adding definitions for "Game Room" and "Hotel/Gaming Facility", and to amend Chapter 177 Attachment 5 of the Code to provide for a Hotel/Gaming Facility as a permitted use in the Office/Industry District of the Village of Islandia, and to amend Chapter 177 Attachment 7 of the Code to establish parking requirements for the Hotel/Gaming Facility use.

The Board of Trustees determined that the adaptive re-use of developed parcels following changing economic conditions in the Village will maintain the aesthetics, safety and vitality of

2

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM

NYSCEF DOC. NO. 23

INDEX NO. 621008/2017

RECEIVED NYSCEF: 01/16/2018

hotels in the Office/Industry District which serve an important role in the Village's economy. The Board of Trustees determined that required proximity to the Long Island Expressway and large parcel size shall minimize any potential effect of traffic, noise and other impacts to the Village and its residents.

1.5    Findings.

The Board of Trustees after a review of available information and due deliberation hereby finds that it is in the best interests of the residents and property owners and of the orderly development of the Village of Islandia that:

1.5.1 Section 177-3 B. Definitions of the Code are to be amended to include definitions for Game Room and Hotel/Gaming Facility.

1.5.2 Chapter 177 Attachment 5 of the Code should be amended to include Hotel/Gaming Facility as a permitted use in the Office/Industry District (OI) of the Village of Islandia.

1.5.3 Chapter 177 Attachment 7 of the Code should be amended to provide for parking requirements for the Hotel/Gaming Facility use.

2.0    General Provisions

2.1    Amendments to Section 177-3 B. Definitions

2.1.1.    Section 177-3 B. Definitions is hereby amended to add the definition "GAME ROOM" as follows:

"GAME ROOM"   A "building" or "structure" or an area within a "building" or "structure", or part thereof, used for video and arcade games usually operated by coins but does not include video gaming terminals and facilities such as, but not limited to, video lottery terminals ("VLTs") authorized under Section 1617-a of the New York State Tax Law and

3

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM

NYSCEF DOC. NO. 23

INDEX NO. 621008/2017

RECEIVED NYSCEF: 01/16/2018

licensed by the New York State Gaming Commission, and off-track betting simulcast facilities authorized pursuant to the New York State Racing, Pari-Mutuel Wagering and Breeding Law.

2.1.2    Section 177-3 B. Definitions is hereby amended to add the definition "HOTEL/GAMING FACILITY" as follows:

"HOTEL/GAMING FACILITY" A Hotel with more than 150 rooms with an indoor facility containing video lottery terminals (VLTs) authorized by Section 1617-a of the New York State Tax Law and licensed by the New York State Gaming Commission and/or simulcast off-track betting simulcast facilities authorized pursuant to the New York State Racing, Pari-Mutuel Wagering and Breeding Law, located on a site having a minimum lot area of seven (7) acres and at least 600 feet of frontage on the Long Island Expressway (Interstate 495) and/or a Long Island Expressway Service Road. A restaurant and/or other such uses which are primarily intended for use by visitors, guests or customers of the Hotel/Gaming Facility may be provided and/or operated.

2.2    Amendment to Chapter 177 Attachment 5.

Chapter 177 Attachment 5 Village of Islandia Office and Industrial Districts: Table of Use Regulations is hereby amended to add the Use Classification of Hotel/Gaming Facility as follows:

| Use Classification | O District | OI District | I District |
|---|---|---|---|
| Hotel/Gaming Facility | ------- | P | ------- |

3.    Amendment to Chapter 177 Attachment 7.

Chapter 177 Attachment 7 Village of Islandia: Parking Schedule is hereby amended as follows:

4

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM
NYSCEF DOC. NO. 23

INDEX NO. 621008/2017
RECEIVED NYSCEF: 01/16/2018

| Use or Use Category | Unit or Measurement | Additional Requirements |
|---|---|---|
| 37.. Hotel/Gaming Facility<br>a. VLTs<br>b. Hotel Rooms<br><br>c. Restaurants, tavern serving on-premises food and/or drink<br>d. Staff | • 1 per 1.75 VLTs<br>• 1 per every 2 sleeping room or suite<br><br>• 1 per 6 seats<br><br>• 2 per every 3 employees either in total or the maximum per largest shift | This requirement may be satisfied through the use of a combination of stacked parking and non-stacked or valet parking |
| 38. Any use not listed above as the Planning Board shall deem adequate | | |

### 3.0    Severability

### 3.1    Severability

The provisions of this Local Law are declared to be severable, and if any section, sentence, clause or phrase of this article shall for any reason be held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining sections, sentences, clauses and phrases of this Local Law, but they shall remain in effect, it being the legislative intent that this Local Law shall stand, notwithstanding the invalidity of any part.

5

14585217v13

# EXHIBIT "D"

FILED: SUFFOLK COUNTY CLERK 01/16/2018 06:24 PM

NYSCEF DOC. NO. 26
JAN/12/2018/FRI 02:10 PM                                    FAX No.

INDEX NO. 621008/2017

RECEIVED NYSCEF: 01/16/2018

P. 002

# BUILDING DIVISION CERTIFICATE
## VILLAGE OF ISLANDIA, SUFFOLK COUNTY, NY
### 1100 Old Nichols Road, Islandia, NY 11749 • Tel: 631-348-1133

Address of property to which this Certificate applies:

Address: 3635 Expressway Drive North, (Hauppauge) Islandia, New York

This certifies that the above property contains the following improvements which conform substantially with the terms and requirements of the New York State Building Code and the Village of Islandia Zoning Local Law at the time of construction and that the premises may be occupied for the purpose as stated:

Continued Permit #4299...............With all Wall, Floor and Ceiling Finishes and Handicap Accessories New HVAC Ductwork with Supply and Return Diffusers and Controllers with Roof Top Units and all Connections  Areas included are: IT Room, Electric Room, IDF/MGAM, Public Restrooms at Monet Casino, Concession Bar and Storage, Grab N Go, 1&2 Slot Storage, Slot Office  All Work Performed Per Village of Islandia and NYS Building Codes and Approved Plans Dated 08/26/16 All Permits for Fire Alarm, Fire Sprinkler, CO2 Continued from Phase One, Completed and Approved by Fire Marshal Joe Correira  C/Occupancy 19 May 2017 GP:rf

Permit #4324  Plumbing Riser Shut Off Valves for Domestic Water and HVAC  Chiller Lines to be installed on Existing Water Lines on 4th Floor  C/Occupancy 16 Aug 2017 GP:rf

Permit #4323  Demolish Six (6) Hotel Rooms on West Side of Building, 4th Floor  All Non-Bearing Walls with all Wall, Floor and Ceiling Finishes including Bathrooms, Electric and A/C  C/Occupancy 16 Aug 2017 GP:rf

Permit #3163 FM  New installed Kitchen Suppression System  C/Compliance 24 Aug 2017 GP:rf

Existing Hotel Known as JAKE'S 58 Meets All Criteria of a Hotel/Gaming Facility under Village Of Islandia Code 177-3 B and attachments 5 and 7 to chapter 177 ( as amended by Local Law 3 of 2017 ) and requirements of NYS Tax Law 1617-A for 1000 Video Lottery Terminals and an Off-Track Betting Simulcast Facility and here by determined to be permitted use as a Hotel/Gaming Facility C/Occupancy 11 Jan 2018 GP:rf

0504-008.00-02.00-058.002  (Zoned General Service E District Formerly)
Office/Industry District
385'X Variable 8.05 Acres  Map Of Bedford Park

The above improvements or any part thereof shall not be used for any purpose other than for which they are certified.  This certificate will be null and void if the improvements are altered in any manner or additions are made thereto without authorization from the Village of Islandia.

Page 6 of 6

Date: 1-12-18

Signature _____
Official copy must have original signature

# EXHIBIT "E"



**Gaming Commission**

One Broadway Center, Schenectady, NY 12305
www.gaming.ny.gov

John A. Crotty, Commissioner
Peter J. Moschetti, Jr., Commissioner
John J. Poklemba, Commissioner
Barry Sample, Commissioner
Todd R. Snyder, Commissioner

Robert Williams, Executive Director
Edmund C. Burns, General Counsel

February 27, 2017

Mr. Philip C. Nolan
President & CEO
Suffolk Regional Off-Track Betting Corporation
425 Oser Avenue #2
Hauppauge, NY 11788

Dear Mr. Nolan:

On February 27, 2017, the New York State Gaming Commission (Commission) approved an amendment to the Suffolk Regional Off-Track Betting Corporation (Suffolk OTB) plan of operation to authorize the operation of a new branch location, d/b/a Jake's 58 Hotel & Casino at 365 Expressway Drive North, Islandia, New York. The Commission has also received the request from Suffolk OTB dated February 24, 2017 for an operation certificate in order to begin video lottery gaming operations at such branch office.

Suffolk OTB has submitted various documentation and assurances to the Commission in support of the issuance of an operation certificate, which included:

1.    all documents required by 9 NYCRR section 5115.2;
2.    documentation that all Suffolk employees are licensed;
3.    payroll records;
4.    management agreement dated March 7, 2014 and amended on May 24, 2016; and
5.    lease agreement dated December 20, 2016 and amended on February 24, 2017.

The Commission has reviewed the aforementioned documentation and determined that Suffolk OTB meets the requirements for the issuance of an operation certificate in accordance with 9 NYCRR section 5115.2. The effective date of the operation certificate is February 27, 2017. The operation certificate is subject to the Commission's authority to revoke, suspend, limit or otherwise alter such operation certificate and shall remain in full force and effect for so long as Suffolk OTB remains licensed as a video lottery gaming agent. If Suffolk OTB wishes to amend, alter or

Mr. Philip C. Nolan
February 27, 2017
Page 2

modify such operation certificate, Suffolk OTB must follow the guidelines set forth in 9 NYCRR section 5313.9.

Issuance of the operation certificate does not affect, terminate or in any manner alter the conditions set forth in the Suffolk OTB temporary license as a video lottery gaming agent.

Sincerely,

Robert Williams
Executive Director

cc: Chuck Kilroy, General Manager, Suffolk OTB
James McManmon, Esq., Suffolk OTB
Thomas Anapolis, Director, Division of Gaming



**NEW YORK**
STATE OF
OPPORTUNITY

**Gaming Commission**

# VIDEO LOTTERY GAMING FACILITY OPERATION CERTIFICATE

## SUFFOLK REGIONAL OFF-TRACK BETTING CORP.

This is to certify that the above-named gaming facility licensee is authorized to conduct gaming activity at the location in the Village of Islandia, Suffolk County to the extent set forth in such licensee's application for such license and as approved by the Gaming Commission, pursuant to the provisions set forth in New York Tax Law section 1617-a and Title 9 of the Official Codes, Rules and Regulations section 5115.2.

This certificate is not transferable to any other premises and shall not be deemed a property or vested right and may be suspended, revoked, limited or altered at any time pursuant to law and all applicable rules and regulations.

Date of Issuance



Robert Williams, Executive Director

February 27, 2017

**THIS CERTIFICATE MUST BE DISPLAYED PROMINENTLY**