UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re

                                                     Case No. 12-43503-CEC

Suffolk Regional Off-Track Betting Corporation,

                                                     Chapter 9

                                Debtor.
------------------------------------------------------------------------X
Jennifer Tomasino, Kevin Montano, Richard Meyer,
and Apryl L. Meyer,

                          Plaintiffs,

-against-                                    Adv. Pro. No. 18-1033-CEC

Incorporated Village of Islandia, Board of Trustees
of the Incorporated Village of Islandia, Delaware
North Islandia Properties, LLC aka Delaware North,
and Suffolk Regional Off-Track Betting Corporation,

                          Defendants.
------------------------------------------------------------------------X

DECISION DISMISSING THIRD CAUSE OF ACTION

APPEARANCES:

Anton J. Borovina, Esq.
Law Office of Anton J. Borovina
225 Broadhollow Road, Ste. 303
Melville, NY 11747
Attorney for Plaintiffs

Paul Sabatino II, Esq.
1617 New York Ave.
Huntington Station, NY 11746
Attorney for Plaintiffs

Christopher F. Graham, Esq.
Kelly Robreno Koster, Esq.
Sarah H. Morrissey, Esq.
Eckert Seamans Cherin & Mellott, LLC
10 Bank St Suite 700
White Plains, NY 10606
Attorneys for Suffolk Regional Off-Track
Betting Corporation

Jarrett M. Behar, Esq.
Michael Stanton, Esq.
Sinnreich Kosakoff & Messina, LLP
267 Carleton Avenue, Ste. 301
Central Islip, NY 11722
Attorneys for Incorporated Village of
Islandia and Board of Trustees of the
Incorporated Village of Islandia

Charles W. Malcomb, Esq.
Daniel A. Spitzer, Esq.
Richard L. Weisz, Esq.
Carmine J. Castellano, Esq.
Hodgson Russ, LLP
140 Pearl Street
Buffalo, NY 14202
Attorneys for Delaware North Islandia
Properties, LLC

Anthony S. Guardino, Esq.
John C. Stellakis, Esq.
Farrell Fritz, P.C.
1320 RXR Plaza
Uniondale, NY 11556
Attorneys for Delaware North Islandia
Properties, LLC

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the joint motion of the Incorporated Village of Islandia (the "Village"), the Board of Trustees of the Incorporated Village of Islandia (the "Board"), Delaware North Islandia Properties, LLC aka Delaware North ("Delaware North"), and Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB"), seeking to dismiss the third cause of action of a complaint filed by Jennifer Tomasino, Kevin Montano, Richard Meyer, and Apryl L. Meyer (collectively, the "Plaintiffs"),  alleging that the Board violated Municipal Home Rule Law ("MHRL") § 23(2)(f) by adopting Local Law No. 3-2017 without a mandatory referendum.  For the reasons below, Local Law 3-2017 does not abolish, transfer, or curtail the power of any elective officer, and therefore was not subject to mandatory referendum requirement imposed by MHRL § 23(2)(f).  As such, that claim must be dismissed.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This non-core proceeding is related to these bankruptcy cases. Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate.").  A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case.  28 U.S.C. § 157(c)(1).  Absent consent of the parties to entry of a final order, the bankruptcy judge is directed to submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. Id.

Although the Plaintiffs have not consented to entry of judgment by this Court (see the

Plaintiff's Statement of Non-Consent to Entry of Judgment (ECF. No. 45))[1], this Court may

enter an order dismissing Plaintiff's third cause of action because such an order is interlocutory.

See O'Toole v. McTaggart (In re Trinsum Group, Inc.), 467 B.R. 734, 738

(Bankr.S.D.N.Y.2012) ("[B]oth before and after Stern v. Marshall, [564 U.S. 462 (2011)] it is

clear that the bankruptcy court may handle all pretrial proceedings, including the entry of an

interlocutory order dismissing fewer than all of the claims in an adversary complaint.").

BACKGROUND

On May 11, 2012, Suffolk OTB filed a petition for relief under Chapter 9 of the

Bankruptcy Code. Suffolk OTB is a public benefit corporation organized under Articles V and

VI of the New York Racing, Pari-Mutuel Wagering and Breeding Law (the "Racing Law").

(Disclosure Statement at 13, Case No. 12-43503-CEC, ECF No. 298.)

On September 11, 2014, Suffolk OTB filed a second amended plan and second amended

disclosure statement (the "Disclosure Statement"). (Case No. 12-43503-CEC, ECF Nos. 297,

298.)  On that same date, the Disclosure Statement was approved.  (Case No. 12-43503-CEC,

ECF No. 300). Following a hearing on October 22, 2014, the Second Amended Plan for the

Adjustment of Debts of Suffolk Regional Off-Track Betting Corporation (the "Plan") (Case No.

12-43503-CEC, ECF No. 318) was confirmed (Case No. 12-43503-CEC, ECF No. 326).

The Plan provides for construction of a video lottery terminal facility (the "VLT

Facility"), and the funding and feasibility of the Plan depends on its revenues. (Plan at 1-2, Case

No. 12-43503-CEC, ECF No. 318.) The Plan contemplated that the VLT Facility would be

---

[1] Citations to "ECF No." are to documents filed in Adv. Pro. No. 18-01033-CEC, identified by docket entry number. Citations to "Case No. 12-43503-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re Suffolk Regional Off-Track Betting Corporation, identified by docket entry number.

constructed in Medford, New York. (Plan at 1-2, Case No. 12-43503-CEC, ECF No. 318.)

However, Suffolk OTB subsequently decided to build the VLT Facility in Islandia, New York at

the site of the former Marriott Hotel located at 3635 Express Drive North, Islandia, New York

11749 (the "Location").  (Status Ltr., Case No. 12-43503-CEC, ECF No. 496.)

On February 12, 2018, the Plaintiffs commenced this action in New York State Supreme

Court, Suffolk County (the "State Court"), against the Village, the Board, and Delaware North,

challenging Local Law No. 3-2017, a zoning amendment enacted by the Village and the Board,

which provided the statutory basis for Delaware North (Suffolk OTB's operating partner) to

obtain a permit for the construction and operation of the VLT Facility.  Suffolk OTB moved to

intervene in the action, and upon the State Court's decision and order authorizing Suffolk OTB

to intervene as a defendant, Suffolk OTB removed the action to this Court.

The following are the relevant allegations of the complaint.

In November 1994, the Board approved and adopted a zoning master plan entitled the

"Comprehensive Plan for the Village of Islandia, Suffolk County, New York," (the "Master

Plan") which was applicable to the territorial jurisdiction of the Village, and which modified the

existing zoning designations into new specialized zones, zoning districts, and district boundaries.

(Compl. ¶¶ 11, 13, ECF No. 10-1.)  One new district created by the Master Plan was the

office/industrial district (the "District"), to permit office uses and accessory facilities. (Compl. ¶

14, ECF No. 10-1.)  Hotels were "a permitted use by special exception approved by the [] Board"

and were not permitted to have multiple uses. (Compl. ¶¶ 14, 15, ECF No. 10-1.)

The Board also adopted Article X of Chapter 177 of the Village of Islandia Code (the

"Village Code") in furtherance of the Master Plan, which prescribed permitted and non-

permitted office and industrial uses of land within the District.  (Compl. ¶ 17, ECF No. 10-1.)

Chapter 177 of the Village Code provided that land in the District may be used as a hotel if the

Board issued a special permit, which was subject to a public hearing.  (Compl. ¶ 17, ECF No. 10-

1.)  It also prohibited any land in the District to be used for a gaming purpose.  (Compl. ¶ 18,

ECF No. 10-1.)

In 1989, the Board approved a special permit authorizing the construction and operation

of a hotel (the "Hotel") at the Location.  (Compl. ¶ 19, ECF No.10-1.)  Delaware North is the

current owner of the Hotel and the Location.  (Compl. ¶ 20, ECF No. 10-1.)

The complaint alleges that, in 2016, the Board and Delaware North "conspired amongst

themselves to formulate a plan and scheme to enter into a contract whereby the Village would

agree to permit Delaware North [and its affiliates] to use the Hotel as a video lottery terminal . . .

facility in exchange for Delaware North agreeing to make substantial annual payments to the

Village." (Compl. ¶ 22, ECF No. 10-1.) On March 28, 2016, Delaware North applied for a

special permit authorizing the construction and use of the VLT Facility, including an off-track

betting simulcast facility, as an accessory use of the Hotel (the "Special Permit Application").

(Compl. ¶ 22, ECF No. 10-1.)  Although Delaware North intended for the payments to be a gift

to the Village, the Village accepted these payments in exchange for the approval of Delaware

North's Special Permit Application. (Compl. ¶¶ 24-27, ECF No. 10-1.)

On August 12, 2016, the Board approved the Special Permit Application and issued the

special permit to Delaware North (the "Special Permit").  (Compl. ¶ 28, ECF No. 10-1.)  On

August 16, 2016, Delaware North and the Village entered into an agreement entitled The

Taxpayer Relief Agreement Between the Village of Islandia and Delaware North Islandia

Properties, LLC (the "Agreement"), memorializing the agreement of Delaware North to make

annual payments to the Village.  (Compl. ¶ 30, ECF No. 10-1.)

5

On September 13, 2016, the Plaintiffs and others commenced an Article 78 proceeding in State Court, Index. No. 2016-8907, challenging the Special Permit granted by the Board to Delaware North. (Compl. ¶ 33, ECF No. 10-1.) On September 7, 2017, the State Court issued a decision and order which, among other things, vacated the Special Permit, finding that the VLT Facility, including the off-track betting simulcast facility, is not a permitted accessory use of a hotel in the District under Chapter 177 of the Village Code. (Compl. ¶ 35, ECF No. 10-1; Compl. Ex. B, State Court Decision at 4-5, ECF No. 10-1.)

After that ruling, the Village and Delaware North modified the Agreement so that the payments to be made by Delaware North thereunder were made in exchange for the Village amending the Village Code to permit the Hotel to be used as a VLT Facility with an off-track betting simulcast facility.  (Compl. ¶¶ 36, 37, ECF No. 10-1.) On November 28, 2017, in furtherance thereof, the Board adopted Local Law No. 3-2017, amending Article X of Chapter 177 of the Village Code, to "provide for a Hotel/Gaming Facility as a permitted use in the [] District," thereby permitting the Hotel to be used as a VLT Facility with an off-track betting simulcast facility. (Compl. ¶ 38, ECF No. 10-1; Compl. Ex. C, Local Law No. 3-2017 §§ 1.4, 2.2, ECF No. 10-1.)

Pursuant to Local Law No. 3-2017, Delaware North was granted a certificate of occupancy authorizing the use and occupancy of the Hotel as a VLT Facility with an off-track betting simulcast facility.  (Compl. ¶ 41, ECF No.10-1.)

The Plaintiffs challenge Local Law No. 3-2017 on the grounds that the Board (1) engaged in unlawful zoning by contract, (2) engaged in spot zoning, and (3) violated the requirement of MHRL § 23(2)(f) for a mandatory referendum.  The Plaintiffs also asserted a claim to vacate the certificate of occupancy and a claim for a permanent injunction.

Delaware North, the Village, the Board, and Suffolk OTB (as intervening defendant) moved to dismiss the claim pursuant to MHRL § 23(2)(f) (the "Third Cause of Action"), and the claims seeking vacatur of the certificate of occupancy (the "Fourth Cause of Action") and imposition of a permanent injunction (the "Fifth Cause of Action"). (Mot. to Dismiss, ECF Nos. 17, 18, 19.) The Plaintiffs opposed the motion. (Opp'n, ECF No. 29.) After a hearing held on July 11, 2018, and for the reasons stated on the record at that hearing, the Court issued an order on August 2, 2018, dismissing the Fourth Cause of Action and the Fifth Cause of Action, and reserving decision on the Third Cause of Action. This decision addresses the Third Cause of Action.

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure (the "Rules"), made applicable to this adversary proceeding pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. Rule 12(b)(6), made applicable to this adversary proceeding pursuant to Bankruptcy Rule 7012(b), provides that a complaint may be dismissed "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). The purpose of Rule 12(b)(6) "'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'" Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (1955)).  In

making this determination, a court must liberally construe the complaint, accept the factual

allegations as true, and draw all reasonable inferences in favor of the plaintiff.  See Goldstein v.

Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  However, courts "are not bound to accept as true a legal

conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); see

Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.").  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  "Determining whether

a complaint states a plausible claim for relief" is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  Id. at 679.  In other

words, plausibility "'depends on a host of considerations: the full factual picture presented by the

complaint, the particular cause of action and its elements, and the existence of alternative

explanations so obvious that they render plaintiff's inferences unreasonable.'"  Fink v. Time

Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (quoting L-7 Designs, Inc. v. Old Navy, LLC,

647 F.3d 419, 430 (2d Cir. 2011)).

## DISCUSSION

The Defendants argue that New York law establishes that zoning amendments cannot be

the subject of referenda, citing Elkind v. City of New Rochelle, 163 N.Y.S.2d 870 (N.Y. Sup. Ct.

1957), aff'd, 165 N.Y.S.2d 709 (N.Y. App. Div. 1957), aff'd, 5 N.Y.2d 836 (N.Y. 1958).  The

Plaintiffs argue that Elkind is no longer good law because it pre-dates the enactment of MHRL §

23, which provides that any local law which abolishes, transfers, or curtails any power of an

elected officer is subject to mandatory referendum.  The Plaintiffs further argue that Local Law

No. 3-2017 was subject to mandatory referendum under MHRL § 23 because it curtailed the

Board's power by completely eliminating the Board's ability "to determine the use of land in a

Village as a casino." (Opp'n at 8, ECF No. 29.)  The Defendants respond that Local Law No. 3-

2017 was not subject to mandatory referendum because it did not abolish, transfer, or curtail the

power of the Board -- which position, as will be discussed below, is clearly correct.

MHRL § 23(2)(f) provides:

> Except as otherwise provided by or under authority of a state
> statute, a local law shall be subject to mandatory referendum if it:
> *          *          *
> f. Abolishes, transfers or curtails any power of an elective officer.

N.Y. Mun. Home Rule Law § 23(2)(f).

The New York Court of Appeals has explained that "[t]he requirement of a referendum

for legislation that 'curtails any power of an elective officer' must be read as applying only to

legislation that impairs a power conferred on the officer as part of the framework of local

government." Mayor of New York v. Council of New York, 9 N.Y.3d 23, 33 (N.Y. 2007). "[A]s

a general rule, a law that merely regulates the operation of . . . government  . . . is not a

curtailment of an officer's power." Id.

The Plaintiffs argue that Local Law No. 3-2017 reduced the zoning power of the Mayor

and the members of the Board because, instead of requiring the Board to issue special permits for

a Hotel/Gaming Facility, the law gives the building inspector the authority to approve the use on

an as of right basis.  (Opp'n at 8-9, ECF No. 29.)  The Defendants argue that Local Law No. 3-

2017 did not transfer any power to the building inspector because the Board remains in full and

sole control of how a Hotel/Gaming Facility is classified in the local zoning law, consistent with

the Board's undisputed authority to "regulate the location and use of buildings, structures and

land for trade, industry residence, or other purposes." (Mem. of Law in Supp. at 16, ECF No.

17.)

Contrary to the Plaintiffs' argument, Local Law No. 3-2017 did not abolish, transfer, or

curtail the power of any elective official to issue special permits, but rather expanded the powers

of the Board.  Prior to the enactment of that law, the Board lacked the authority to grant a special

permit to a hotel within the District with a gaming facility as an accessory use, as the State Court

determined when it vacated the Board's issuance to Delaware North of the Special Permit

authorizing the construction and use of the VLT Facility.  The State Court found that the

approval of a special use permit for a VLT Facility and off-track betting simulcast facility under

prior law was beyond the scope of the Board's authority:

> It appears, therefore, not only that the administrative record is
> devoid of evidence on which the Village Board could properly base
> a finding that a VLT gaming and [off-track betting] simulcast
> facility is 'customarily incidental' to a hotel use in the [] [D]istrict,
> but also that no such finding is possible . . . .

(Compl. Ex. B, State Court Decision at 6, ECF No. 10-1.)

The Board also lacked the ability to approve any gaming use of any land within the

District.  (Compl. ¶ 18, ECF No. 10-1.)  Local Law No. 3-2017 amended the Village Code to

specifically allow a Hotel/Gaming Facility (as defined in Local Law No. 3-2017) as a permitted

use in the District (Compl. Ex. C, Local Law No. 3-2017, ECF No. 10-1), thereby expanding the

Board's powers.  Nothing in the Local Law No. 3-2017 curtailed or otherwise reduced Board's

authority to issue special permits under the preexisting law to a hotel without a gaming use.

Therefore, Local Law No. 3-2017 was not subject to the mandatory referendum requirement of

MHRL § 23.   See Stokes v. City of Mount Vernon, No. 11 CV 7675 VB, 2015 WL 4710259, at

*9 (S.D.N.Y. Aug. 4, 2015) (finding that MHRL § 23(2)(f) was inapplicable because the

amended law expanded the power of the mayor to remove the inspector general for cause and on

14 days' notice, whereas the prior law provided that the mayor shall appoint the inspector

general to hold office until the end of the mayor's term).  The cases cited by the Plaintiffs where

the courts vacated laws that curtailed an elective official's authority are inapplicable.  See

Heeran v. Scully, 254 N.Y. 344 (N.Y. 1930) (adoption of a local law adding two members to an

elected board was subject to mandatory referendum because it effectively diminished the existing

board members' powers); Mayor of Mount Vernon v. City Council of Mount Vernon, 928

N.Y.S.2d 331 (N.Y. App. Div. 2011) (vacating local law that abolished office of the inspector

general without referendum because it curtailed the mayor's power to appoint the inspector

general).

The Plaintiffs' argument that that Local Law No. 3-2017 transferred the power of the

Board to the building inspector, giving him the authority to issue certificate of occupancy on an

as of right basis, and eliminating the Board's power to issue special permits to a hotel as a

gaming facility, must also be rejected.  (Opp'n at 8-9, ECF No. 29.)   As discussed above, prior

to the enactment of Local Law No. 3-2017, the Board completely lacked the authority to issue

special permits to a gaming facility in the District.  Nothing in Local Law No. 3-2017 transfers

any power from the Board to the building inspector; rather, Local Law No. 3-2017 expanded the

power of the Board by authorizing it to approve a Hotel/Gaming Facility as a permitted use in

the District.  The building inspector's duties are governed by preexisting law, including Village

Code § 177-39, which vests him with the authority to issue certificates of occupancy for

permitted uses, whether under Local Law No. 3-2017 or otherwise.[2]  The delegation of duties to

aid in the management of government, here the issuance of a certificate of occupancy for a

permitted use, does not abolish, transfer, or curtail the Board's statutory duties. <u>Shields v.

County of Delaware</u>, 826 N.Y.S.2d 782, 784 (N.Y. App. Div. 2006) (citing 2004 Ops. Atty. Gen.

No. I 2004–9; 1985 Ops. Atty. Gen. No. I 85–73).  The ultimate power to determine whether a

proposed use is a permitted use, or whether a special permit should be issued, remains in the

hands of the Board, and therefore, MHRL § 23 was not implicated by the adoption of Local Law

No. 3-2017.[3]

---

[2] Village Code § 177-39 provides, in pertinent part:

> No land shall be occupied or used and no building hereafter erected, enlarged,
> extended or altered shall be so occupied or used in whole or in part until a
> certificate of occupancy certifying that such building conforms to the approved
> plans and the requirements of this chapter and stating the purposes for which the
> building may be used in its several parts and any special stipulations shall have
> been issued by the Building Inspector and signed by him or his authorized
> assistant.

[3] Given the conclusion that Local Law No. 3-2017 was not subject to the mandatory referendum requirement of MHRL § 23, it is unnecessary to address the parties' arguments regarding whether <u>Elkind</u> remains good law or was abrogated by the adoption of MHRL § 23.

CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss the Third Cause of Action

is granted.  A separate order will issue.



**Dated: Brooklyn, New York**
**September 27, 2018**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**