**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.

*Counsel for Adjusted Debtor and Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**HEARING DATE:** November 28, 2018
**HEARING TIME:** 2:00 p.m.
**OBJECTION DEADLINE:** November 12, 2018

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION,**<br><br>   **Adjusted Debtor.** | Chapter 9<br><br>Case No. 12-43503-CEC |
| **JENNIFER TOMASINO, KEVIN MONTANO, RICHARD MEYER, and APRYL L. MEYER,**<br><br>   **Plaintiffs,**<br><br>  **-against-**<br><br>**INCORPORATED VILLAGE OF ISLANDIA, BOARD OF TRUSTEES OF THE VILLAGE OF ISLANDIA, DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE NORTH, and SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION,**<br><br>   **Defendants.** | Adv. Proc. No. 18-1033-CEC<br><br><br><br>**NOTICE OF MOTION OF DEFENDANT SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION FOR** <u>**SUMMARY JUDGMENT**</u> |

  **PLEASE TAKE NOTICE** that upon the accompanying Brief in Support of Motion for

Summary Judgment (the "Motion"), dated October 29, 2018, the Declaration of Christopher F.

- 1 -

Graham, Esq. dated October 29, 2018, the Declaration of Celine M. Gazes dated October 29,

2018, and the Statement of Undisputed Material Facts dated October 29, 2018, Adjusted Debtor

and Defendant Suffolk Regional Off-Track Betting Corporation will move this Court before the

Honorable Carla E. Craig, Chief United States Bankruptcy Judge, pursuant to Fed. R. Bankr. P.

7056, which incorporates Fed. R. Civ. P. 56)(e),  for summary judgment in favor of Defendant

Suffolk Regional Off-Track Betting Corporation and against Plaintiffs Jennifer Tomasino, Kevin

Montano, Richard Meyer, and Apryl L. Meyer for all the reasons stated in the accompanying

papers at a hearing to be held on November 28, at 2:00 p.m., or as soon thereafter as counsel may

be heard, at the United States Bankruptcy Court for the Eastern District of New York, located at

271-C Cadman Plaza East, Suite 1595, Brooklyn, NY 11201-1800.

       **PLEASE TAKE FURTHER NOTICE** that opposition papers, if any, to the Motion

shall be filed and served so as to be received no later than November 12, 2018.


Dated:  White Plains, New York
       October 29, 2018

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: */s/ Christopher F. Graham*＿＿＿＿＿＿＿＿＿＿
      Christopher F. Graham, Esq.
      Sarah H. Morrissey, Esq.

      10 Bank Street, Suite 700
      White Plains, New York 10606
      (914) 949-2909
      cgraham@eckertseamans.com
      smorrissey@eckertseamans.com

      *Attorneys for Adjusted Debtor and Defendant*
      *Suffolk Regional Off-Track Betting*
      *Corporation*

TO:     **Anton J. Borovina, Esq.**
       Law Offices of Anton J. Borovina
       *Attorneys for Plaintiffs*
       225 Broad Hollow Road, Suite 303
       Melville, New York 11747
       Ajb@borovinalaw.com

       **Paul Sabatino II, Esq.**
       *Attorneys for Plaintiffs*
       1617 New York Ave.
       Huntington Station, New York 11746
       paulpsII@aol.com

       **Michael Stanton, Esq.**
       **Jarrett M. Behar, Esq.**
       Sinnreich Kosakoff Messina, LLP
       *Attorneys for Defendants Incorporated*
       *Village of Islandia and Board of Trustees of the*
       *Village of Islandia*
       276 Carleton Avenue, Suite 301
       Central Islip, New York 11722
       mstanton@skmlaw.net
       jbehar@skmlaw.net

       **Daniel A. Spitzer, Esq.**
       **Charles Malcomb, Esq.**
       Hodgson Russ, LLP

*Attorneys for Defendants Delaware North*
*Islandia Properties, LLC, aka Delaware North*
140 Pearl Street, Suite 100
Buffalo, New York 14202
Dspitzer@hodgsonruss.com
Cmalcomb@hodgsonruss.com

**Anthony S. Guardino, Esq.**
Farrell Fritz, P.C.
*Attorneys for Defendants Delaware North*
100 Motor Parkway, Suite 138
Hauppague, New York 11788
aguardino@farrellfritz.com

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
cgraham@eckertseamans.com
smorrisesey@eckertseamans.com
*Counsel for Adjusted Debtor and Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**HEARING DATE:** November 28, 2018
**HEARING TIME:** 2:00 p.m.
**OBJECTION DEADLINE:** November 12, 2018

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION,<br><br>     Adjusted Debtor. | Chapter 9<br><br>Case No. 12-43503-CEC |
| JENNIFER TOMASINO, KEVIN MONTANO, RICHARD MEYER, and APRYL L. MEYER,<br><br>     Plaintiffs,<br><br>  -against-<br><br>INCORPORATED VILLAGE OF ISLANDIA, BOARD OF TRUSTEES OF THE VILLAGE OF ISLANDIA, DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE NORTH, and SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION,<br><br>     Defendants. | Adv. Proc. No. 18-1033-CEC<br><br><br><br>**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT SUFFOLK REGIONAL OFF-TRACK BETTING** |

TO:  THE HONORABLE CARLA E. CRAIG,
    CHIEF JUDGE OF THE UNITED STATES BANKRUPTCY COURT FOR THE
    EASTERN DISTRICT OF NEW YORK

Defendant Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB"), by and through its undersigned counsel, Eckert Seamans Cherin & Mellott, LLC, respectfully submits this Motion for Summary Judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 by incorporation and in support of this Motion avers as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Motion under pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This non-core proceeding is related to the Bankruptcy Proceeding.

## II.    FACTUAL BACKGROUND

2.    On May 11, 2012, Suffolk OTB filed a petition for relief under Chapter 9 of the Bankruptcy Code. Suffolk OTB is a public benefit corporation organized under Articles V and VI of the New York Racing, Pari-Mutuel Wagering and Breeding Law (the "Racing Law"). (Disclosure Statement at 13, Case No. 12-43503-CEC, Dckt. No. 298.)

3.    On September 11, 2014, Suffolk OTB filed a second amended plan and second amended disclosure statement (the "Disclosure Statement"). (Case No. 12-43503-CEC, Dckt. Nos. 297, 298.) On that same date, the Disclosure Statement was approved. (Case No. 12-43503-CEC, Dckt. No. 300).

4.    Following a hearing on October 22, 2014, the Second Amended Plan for the Adjustment of Debts of Suffolk Regional Off-Track Betting Corporation (the "Plan") (Case No. 12-43503-CEC, Dckt. No. 318) was confirmed (Case No. 12-43503-CEC, Dckt. No. 326).

5.      The Plan provides for construction of a video lottery terminal facility (the "VLT Facility"), and the funding and feasibility of the Plan depends on its revenues. (Plan at 1-2, Case No. 12-43503-CEC, Dckt. No. 318.)

6.      The Plan contemplated that the VLT Facility would be constructed in Medford, New York. (Plan at 1-2, Case No. 12-43503-CEC, Dckt. No. 318.) However, Suffolk OTB subsequently decided to build the VLT Facility in Islandia, New York at the site of the former Marriott Hotel located at 3635 Express Drive North, Islandia, New York 11749 (the "Location"). (Status Ltr., Case No. 12-43503-CEC, Dckt. No. 496.)

7.      On February 12, 2018, the Plaintiffs commenced this action in New York State Supreme Court, Suffolk County (the "State Court"), against the Village, the Board, and Delaware North, challenging Local Law No. 3-2017, a zoning amendment enacted by the Village and the Board, which provided the statutory basis for Delaware North (Suffolk OTB's operating partner) to obtain a permit for the construction and operation of the VLT Facility.

8.      Suffolk OTB moved to intervene in the action, and upon the State Court's decision and order authorizing Suffolk OTB to intervene as a defendant, Suffolk OTB removed the action to this Court.

### III.    PLAINTIFFS' ALLEGATIONS

9.      In November 1994, the Board approved and adopted a zoning master plan entitled the "Comprehensive Plan for the Village of Islandia, Suffolk County, New York," (the "Master Plan") which was applicable to the territorial jurisdiction of the Village, and which modified the existing zoning designations into new specialized zones, zoning districts, and district boundaries. (Compl. ¶¶ 11, 13, Dckt. No. 10-1.) One new district created by the Master Plan was the office/industrial district (the "District"), to permit office uses and accessory facilities. (Compl. ¶

14, Dckt. No. 10-1.) Hotels were "a permitted use by special exception approved by the []

Board" and were not permitted to have multiple uses. (Compl. ¶¶ 14, 15, Dckt. No. 10-1.

10.     The Board also adopted Article X of Chapter 177 of the Village of Islandia Code

(the "Village Code") in furtherance of the Master Plan, which prescribed permitted and non-

permitted office and industrial uses of land within the District. (Compl. ¶ 17, Dckt. No. 10-1.)

11.     Chapter 177 of the Village Code provided that land in the District may be used as

a hotel if the Board issued a special permit, which was subject to a public hearing. (Compl. ¶ 17,

Dckt. No. 10-1.) It also prohibited any land in the District to be used for a gaming purpose.

(Compl. ¶ 18, Dckt. No. 10-1.)

12.     In 1989, the Board approved a special permit authorizing the construction and

operation of a hotel (the "Hotel") at the Location. (Compl. ¶ 19, Dckt. No.10-1.) Delaware North

is the current owner of the Hotel and the Location. (Compl. ¶ 20, Dckt. No. 10-1.)\

13.     The complaint alleges that, in 2016, the Board and Delaware North "conspired

amongst themselves to formulate a plan and scheme to enter into a contract whereby the Village

would agree to permit Delaware North [and its affiliates] to use the Hotel as a video lottery

terminal . . . facility in exchange for Delaware North agreeing to make substantial annual

payments to the Village." (Compl. ¶ 22, Dckt. No. 10-1.)

14.     On March 28, 2016, Delaware North applied for a special permit authorizing the

construction and use of the VLT Facility, including an off-track betting simulcast facility, as an

accessory use of the Hotel (the "Special Permit Application"). (Compl. ¶ 22, Dckt.No. 10-1.)

15.     On August 12, 2016, the Board approved the Special Permit Application and

issued the special permit to Delaware North (the "Special Permit"). (Compl. ¶ 28, Dckt. No. 10-

1.)

16.     On August 16, 2016, Delaware North and the Village entered into an agreement entitled The Taxpayer Relief Agreement Between the Village of Islandia and Delaware North Islandia Properties, LLC (the "Agreement"), memorializing the agreement of Delaware North to make annual payments to the Village. (Compl. ¶ 30, Dckt. No. 10-1.)

17.     On September 13, 2016, the Plaintiffs and others commenced an Article 78 proceeding in State Court, Index. No. 2016-8907, challenging the Special Permit granted by the Board to Delaware North. (Compl. ¶ 33, Dckt. No. 10-1.)

18.     On September 7, 2017, the State Court issued a decision and order which, among other things, vacated the Special Permit, finding that the VLT Facility, including the off-track betting simulcast facility, is not a permitted accessory use of a hotel in the District under Chapter 177 of the Village Code. (Compl. ¶ 35, Dckt. No. 10-1; Compl. Ex. B, State Court Decision at 4-5, Dckt. No. 10-1.)

19.     On November 28, 2017, the Board adopted Local Law No. 3-2017, amending Article X of Chapter 177 of the Village Code, to "provide for a Hotel/Gaming Facility as a permitted use in the [] District," thereby permitting the Hotel to be used as a VLT Facility with an off-track betting simulcast facility. (Compl. ¶ 38, Dckt. No. 10-1; Compl. Ex. C, Local Law No. 3-2017 §§ 1.4, 2.2, Dckt. No. 10-1.)

20.     The Plaintiffs challenge Local Law No. 3-2017 on the grounds that the Board (1) engaged in unlawful zoning by contract, (2) engaged in spot zoning, and (3) violated the requirement of MHRL § 23(2)(f) for a mandatory referendum. The Plaintiffs also asserted a claim to vacate the certificate of occupancy and a claim for a permanent injunction.

21.     Pursuant to Local Law No. 3-2017, Delaware North was granted a certificate of occupancy authorizing the use and occupancy of the Hotel as a VLT Facility with an off-track betting simulcast facility. (Compl. ¶ 41, Dckt. No.10-1.)

## IV.    PROCEDURAL HISTORY

22.     Delaware North, the Village, the Board, and Suffolk OTB (as intervening defendant) moved to dismiss the claim pursuant to MHRL § 23(2)(f) (the "Third Cause of Action"), and the claims seeking vacatur of the certificate of occupancy (the "Fourth Cause of Action") and imposition of a permanent injunction (the "Fifth Cause of Action"). [Mot. to Dismiss, Dckt. Nos. 17, 18, 19]. The Plaintiffs opposed the motion. [Dckt. No. 29].

23.     After a hearing held on July 11, 2018, and for the reasons stated on the record at that hearing, this Court issued an order on August 2, 2018, dismissing the Fourth Cause of Action and the Fifth Cause of Action, and reserving decision on the Third Cause of Action. [Dckt. No. 50].

24.     This Court issued a Decision and Order dismissing the Third Cause of Action on September 27, 2018 [Dckt. No. 56].

25.     Suffolk OTB now moves for Summary Judgment on the remaining Causes of Action.

## V.    LEGAL STANDARD

26.     As more fully explained in Movant's Brief, Fed. R. Civ. P. 56, incorporated by Bankruptcy Rule 7056(c), entitles a party to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Rojas v. Roman Catholic*

*Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011); *In re the Brunswick Hosp. Ctr., Inc.*, 399

B.R. 582, 586 (E.D.N.Y. Bankr. 2009).

## VI.    RELIEF REQUESTED

27.    There are no genuine issues of material fact regarding Plaintiffs' remaining causes

of action, and Plaintiffs have failed to come forth with material evidence supporting their

allegations.

28.    In their Amended Complaint, Plaintiffs alleged that the Board's decision to rezone

constituted unlawful zoning by contract (Count I) and unlawful spot zoning (Count II) and that,

as a result, Plaintiffs claim entitlement to a permanent injunction preventing Delaware North

from maintaining the VLT Facility (Count IV).

29.    Suffolk OTB respectfully requests an entry of summary judgment on Plaintiffs'

remaining claims because the zoning decision at issue did not constitute illegal contract or spot

zoning.

30.    Plaintiffs cannot meet their heavy burden to demonstrate that they will prevail on

the merits of their claims, and Plaintiffs' request for a permanent injunction based on their

speculative and generic allegations is wholly unwarranted.

31.    Plaintiffs fail to meet their heavy burden to establish that they will suffer

irreparable harm without the injunction; that any purported hardship they would suffer without

an injunction outweighs the numerous manifest hardships Suffolk OTB and New York State will

suffer if this Court grants Plaintiffs the extraordinary remedy of a permanent injunction; or that

the permanent injunction would not harm the public interests at stake.

**WHEREFORE**, for the above-mentioned reasons, and the reasons articulated in Suffolk

OTB's Brief in Support of its Motion for Summary Judgment, Rule 7056 Statement of Material

Facts, and supporting affidavits, Suffolk OTB respectfully requests this Court grant its Motion

for Summary Judgment.

Dated: White Plains, New York
       October 29, 2018

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: _/s/ Christopher F. Graham_____
     Christopher F. Graham, Esq.
     Sarah H. Morrissey, Esq.

     10 Bank Street, Suite 700
     White Plains, New York 10606
     (914) 949-2909
     cgraham@eckertseamans.com
     smorrissey@eckertseamans.com

     *Counsel for Adjusted Debtor and Defendant Suffolk*
     *Regional Off-Track Betting Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on 29th day of October, 2018 I caused a true and correct copy of Suffolk Regional Off-Track Betting Corporations' Motion for Summary Judgment and Brief in Support of Summary Judgment to be served via ECF upon all parties registered to receive service in this case.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: _/s/ Christopher F. Graham_____
      Christopher F. Graham, Esq.
      Sarah H. Morrissey, Esq.

      10 Bank Street, Suite 700
      White Plains, New York 10606
      (914) 949-2909
      cgraham@eckertseamans.com
      smorrissey@eckertseamans.com

      *Counsel for Adjusted Debtor and Defendant Suffolk*
      *Regional Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SUFFOLK REGIONAL OFF-TRACK<br>BETTING CORPORATION,<br><br>          Adjusted Debtor. | Chapter 9<br><br>Case No. 12-43503-CEC |
| JENNIFER TOMASINO, KEVIN MONTANO,<br>RICHARD MEYER, and APRYL L. MEYER,<br><br>          Plaintiffs,<br><br>      -against-<br><br>INCORPORATED VILLAGE OF ISLANDIA,<br>BOARD OF TRUSTEES OF THE VILLAGE<br>OF ISLANDIA, DELAWARE NORTH<br>ISLANDIA PROPERTIES, LLC, a/k/a<br>DELAWARE NORTH, and SUFFOLK<br>REGIONAL OFF-TRACK BETTING<br>CORPORATION,<br><br>          Defendants. | Adv. Proc. No. 18-1033-CEC<br><br>**AFFIDAVIT OF CELINE M. GAZES IN**<br>**SUPPORT OF MOTION FOR SUMMARY**<br>**JUDGMENT OF SUFFOLK REGIONAL**<br>**<u>OFF-TRACK BETTING CORPORATION</u>** |

STATE OF NEW YORK  )
                   )   ss.:
COUNTY OF SUFFOLK  )

      **CELINE M. GAZES** being duly sworn, and under penalty of perjury, deposes and states

as follows based upon her knowledge, information and belief:

      1.     I have been the Comptroller & Director of Finance for Suffolk Regional Off-Track

Betting Corporation ("Suffolk OTB") from 2004 to present.  In that capacity I am personally

familiar with the books and records of Suffolk OTB and its historical financial performance from 2004 to present.

2.      I submit this affidavit in support of Suffolk OTB's Motion for Summary Judgment pursuant to Fed. R. Bankr. P. 7056.

## FACTUAL BACKGROUND

3.      Beginning in 2010, Suffolk OTB was not generating sufficient income: (1) to pay its creditors currently; (2) repay its long term bank debt; or (3) pay any net revenue to Suffolk County.  That situation necessitated the Chapter 9 filing in this Court (the "Chapter 9 Case"). During the Chapter 9 Case, Suffolk OTB was able to significantly restructure its operations and expenses such that it became a viable public benefit corporation once again.  Key to that improvement has been the operations of the VLT Facility—Jake's 58—including its onsite OTB betting parlor and New York State Lottery operations (the "VLT Facility").

4.      As a result, Suffolk OTB has not only been expanding its operations and remained current on all of its obligations, it has greatly reduced its pre-Chapter 9 Case obligations.  Suffolk OTB's pre-Chapter 9 Case bank debt to New York Community Bank of over $5 million has been paid in full.  Suffolk OTB's pre-Chapter 9 case debt to Suffolk County of approximately $600,000 has been paid in full.  The claims of Class 4 general unsecured creditors have been reduced from over $18 million in booked and asserted claims to approximately $13 million in allowed claims as of this date.

5.      Payments to Suffolk County since 2017 under the Confirmed Plan through October 2018 have totaled $3.7 million.  During the same period, payments to other Class 4 creditors under the Confirmed Plan have exceeded $1.9 million.  These payments were made possible solely due to the additional revenue generated for Suffolk OTB by the VLT Facility.

## HARDSHIPS THAT WOULD RESULT FROM A PERMANENT INJUNCTION

6.      If this Court grants the Plaintiffs' permanent injunction closing the VLT Facility,

Suffolk OTB will suffer extreme hardship as follows:

a)      Through October 2018, Suffolk OTB has paid or allocated over four million six hundred thousand dollars ($4,600,000) in distributions pursuant to the Confirmed Plan. However, if Suffolk OTB is enjoined from operating the VLT Facility, Suffolk OTB will be unable to pay its future obligations under the Confirmed Plan.

b)      Suffolk OTB has remaining obligations under the Confirmed Plan totaling over twenty million dollars ($20,000,000) with over fifteen million ($15,000,000) scheduled to be paid in the next 9 months. Those payments will be impossible to make if the VLT Facility stops operating.

c)      If the VLT Facility is forced to close, economic contributions to the Incorporated Village of Islandia, New York will cease.

d)      Without the VLT Facility income stream, Suffolk OTB will be forced to lay off the approximately two hundred (200) local residents it employs in the VLT Facility.

7.      If Suffolk OTB is prohibited from continuing to operate the VLT Facility, the New

York State Education Fund will be deprived of valuable future revenue. As of September 2018,

the VLT Facility has contributed $120,848,925 to the State Education Fund (*see Gaming*

Commission, NEW YORK STATE (https://www.gaming.ny.gov/about/index.php?ID=3)). The New

York Gaming Commission Report for Suffolk OTB's gaming facility is attached hereto as **Exhibit**

**A.**

8.      Suffolk County, New York is guaranteed approximately thirteen million dollars

($13,000,000) from Suffolk OTB during the first ten (10) years of Suffolk's operation in the

Incorporated Village of Islandia, New York, and Suffolk OTB remains on pace to fulfill this

obligation. Indeed, at the current level of operations, the payments to Suffolk County will be

3

substantially in excess of that amount. However, if Suffolk OTB is forced to relocate, Suffolk County will not receive future revenue from Suffolk OTB for many months, if not years.

9.      Contrary to Plaintiffs' assertions that Suffolk OTB "made no or insubstantial investment" in the VLT Facility, Suffolk OTB has invested over forty-four million dollars ($44,000,000) in the VLT Facility to date. These investments have included capital expenditures of over thirty-two million dollars ($32,000,000), pre-opening costs of approximately one million eight hundred thousand dollars ($1,800,000) and working capital of approximately eleven million dollars ($11,000,000). Suffolk OTB continues to invest in the VLT Facility on a continual basis as required to operate and it is the VLT Facility operations that generate the profits Suffolk OTB requires to complete the Confirmed Plan.

_____
Celine M. Gazes
Comptroller and Director of Finance
Suffolk Regional Off-Track Betting
Corporation

SWORN TO BEFORE ME THE 29TH DAY OF OCTOBER, 2018,

_____
NOTARY PUBLIC

JAMES McMANMON
NOTARY PUBLIC, State of New York
Suffolk County Reg. No. 4991902
Comm. expires Feb. 10, 20 20

4

**EXHIBIT A**



**Jake's 58 Hotel & Casino**
3635 Express Drive North
Islandia, NY 11749
www.jakes58.com

| | | | | | | | Distribution of Net Win: | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Month | Credits Played | Free Play Allowance | Credits Won | Net Win | Avg Daily VGM's | Win/VGM per Day | Education Contribution | Agent Commission | Marketing Allowance | Gaming Floor & Admin | Capital Award |
| Apr-18 | $280,495,832 | $331,265 | $262,735,084 | $17,429,482 | 1,000 | $581 | $7,843,267 | $6,100,319 | $1,742,948 | $1,742,948 | $0 |
| May-18 | $282,275,448 | $795,069 | $264,094,120 | $17,386,259 | 1,000 | $561 | $7,823,817 | $6,085,191 | $1,738,626 | $1,738,626 | $0 |
| Jun-18 | $263,775,307 | $724,875 | $246,954,118 | $16,096,314 | 1,000 | $537 | $7,243,341 | $5,633,710 | $1,609,631 | $1,609,631 | $0 |
| Jul-18 | $283,610,458 | $879,223 | $265,456,897 | $17,224,338 | 1,000 | $557 | $7,773,452 | $6,046,018 | $1,727,434 | $1,727,434 | $0 |
| Aug-18 | $291,505,761 | $908,688 | $272,852,094 | $17,744,979 | 1,000 | $572 | $7,985,241 | $6,210,743 | $1,774,498 | $1,774,498 | $0 |
| Sep-18 | $283,610,499 | $896,881 | $265,799,006 | $16,914,612 | 1,000 | $564 | $7,611,575 | $5,920,114 | $1,691,461 | $1,691,461 | $0 |
| Oct-18 | | | | | | | | | | | |
| Nov-18 | | | | | | | | | | | |
| Dec-18 | | | | | | | | | | | |
| Jan-19 | | | | | | | | | | | |
| Feb-19 | | | | | | | | | | | |
| Mar-19 | | | | | | | | | | | |
| Total | $1,685,273,305 | $4,536,001 | $1,577,891,318 | $102,845,985 | 1,000 | $562 | $46,280,693 | $35,996,095 | $10,284,598 | $10,284,599 | $0 |
| | 0.27% | 93.63% | 6.10% | | | | 45.00% | 35.00% | 10.00% | 10.00% | 0.00% |

## Definition of Terms

| | |
|---|---|
| **Credits Played:** | The amount of onscreen credits wagered on a video gaming machine (VGM).  This amount includes Credits Played resulting from; (a) cash and vouchers inserted into a VGM, and (b) any Credits Won used to make a wager on a VGM. |
| **Free Play Allowance:** | The amount of promotional free play included in Credits Played that is subsidized by the State through a reduction to Net Win. |
| **Credits Won:** | The amount of onscreen credits won on a VGM (prize payout).  Also includes any progressive jackpot liability due to players. |
| **Net Win:** | The net revenues remaining after payout of prizes to players. (Credits Played less Credits Won)  Net win is commonly referred to as "Hold" or "Net Machine Income". |
| **Education Contribution:** | The portion of Net Win allocated to the State Education Fund for direct aid to education. |
| **Agent Commission:** | The portion of Net Win paid to the casino operator as compensation for operating the gaming facility. Most operating expenses of the gaming facility are paid from the agent commission (including the horse racing subsidies), with the exception of the gaming floor itself, which is provided by the other vendors and paid for by the Lottery. |
| **Marketing Allowance:** | The portion of the Net Win paid to the casino operator to finance the costs of advertising, marketing and promoting video lottery play at the casino. |
| **Gaming Floor & Admin:** | The portion of Net Win used to reimburse gaming floor vendors (central system and game machine providers) and administer the Video Gaming Program (sometimes labeled "Lottery Administration"). |
| **Capital Award:** | Jake's 58 is not eligible for Capital Award. |

## Distribution of Net Win per Legislation

| | Education Contribution | Agent Commission | | | | | Marketing Allowance | Gaming Floor & Admin | Capital Award |
|---|---|---|---|---|---|---|---|---|---|
| | | Operator | Purses | Breeders | NYRA Ops | NYRA Cap Exp | | | |
| All net win annually | 45.00% | 30.00% | 2.30% | 0.50% | 1.30% | 0.90% | 10.00% | 10.00% | 0% |

Source:  New York State Gaming Commission



**Jake's 58 Hotel & Casino**
3635 Express Drive North
Islandia, NY 11749
www.jakes58.com

| | | | | | | | Distribution of Net Win: | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Month | Credits Played | Free Play Allowance | Credits Won | Net Win | Avg Daily VGM's | Win/VGM per Day | Education Contribution | Agent Commission | Marketing Allowance | Gaming Floor & Admin | Capital Award |
| Apr-17 | $95,141,952 | $0 | $88,139,822 | $7,002,130 | 300 | $778 | $3,150,959 | $2,450,746 | $700,213 | $700,213 | $0 |
| May-17 | $157,744,793 | $0 | $147,133,915 | $10,610,878 | 815 | $420 | $4,774,895 | $3,713,807 | $1,061,088 | $1,061,088 | $0 |
| Jun-17 | $169,287,912 | $7,950 | $157,901,331 | $11,378,631 | 1,000 | $379 | $5,120,384 | $3,982,521 | $1,137,863 | $1,137,863 | $0 |
| Jul-17 | $209,976,916 | $287,328 | $196,443,021 | $13,246,567 | 1,000 | $427 | $5,960,955 | $4,636,298 | $1,324,657 | $1,324,657 | $0 |
| Aug-17 | $219,140,475 | $406,031 | $204,558,789 | $14,175,655 | 1,000 | $457 | $6,379,045 | $4,961,479 | $1,417,566 | $1,417,566 | $0 |
| Sep-17 | $217,762,261 | $343,086 | $203,803,975 | $13,615,200 | 1,000 | $454 | $6,126,840 | $4,765,320 | $1,361,520 | $1,361,520 | $0 |
| Oct-17 | $227,434,278 | $611,999 | $213,013,106 | $13,809,174 | 1,000 | $445 | $6,214,128 | $4,833,211 | $1,380,917 | $1,380,917 | $0 |
| Nov-17 | $220,215,321 | $722,587 | $206,095,953 | $13,396,782 | 1,000 | $447 | $6,028,552 | $4,688,874 | $1,339,678 | $1,339,678 | $0 |
| Dec-17 | $241,922,402 | $1,326,888 | $226,781,972 | $13,813,541 | 1,000 | $446 | $6,216,093 | $4,834,739 | $1,381,354 | $1,381,354 | $0 |
| Jan-18 | $242,681,722 | $702,124 | $227,147,438 | $14,832,161 | 1,000 | $478 | $6,674,472 | $5,191,256 | $1,483,216 | $1,483,216 | $0 |
| Feb-18 | $249,771,206 | $645,672 | $233,940,711 | $15,184,823 | 1,000 | $542 | $6,833,171 | $5,314,688 | $1,518,482 | $1,518,482 | $0 |
| Mar-18 | $283,011,691 | $678,365 | $265,134,345 | $17,198,981 | 1,000 | $555 | $7,739,541 | $6,019,643 | $1,719,898 | $1,719,898 | $0 |
| Total | $2,534,090,930 | $5,732,030 | $2,370,094,376 | $158,264,524 | 926 | $486 | $71,219,036 | $55,392,583 | $15,826,452 | $15,826,453 | $0 |
| | 0.23% | 93.53% | 6.25% | | | | 45.00% | 35.00% | 10.00% | 10.00% | 0.00% |

**Fiscal Year 2017/2018**

---

### Definition of Terms

**Credits Played:** The amount of onscreen credits wagered on a video gaming machine (VGM). This amount includes Credits Played resulting from; (a) cash and vouchers inserted into a VGM, and (b) any Credits Won used to make a wager on a VGM.

**Free Play Allowance:** The amount of promotional free play included in Credits Played that is subsidized by the State through a reduction to Net Win.

**Credits Won:** The amount of onscreen credits won on a VGM (prize payout). Also includes any progressive jackpot liability due to players.

**Net Win:** The net revenues remaining after payout of prizes to players. (Credits Played less Credits Won) Net win is commonly referred to as "Hold" or "Net Machine Income".

**Education Contribution:** The portion of Net Win allocated to the State Education Fund for direct aid to education.

**Agent Commission:** The portion of Net Win paid to the casino operator as compensation for operating the gaming facility. Most operating expenses of the gaming facility are paid from the agent commission (including the horse racing subsidies), with the exception of the gaming floor itself, which is provided by the other vendors and paid for by the Lottery.

**Marketing Allowance:** The portion of the Net Win paid to the casino operator to finance the costs of advertising, marketing and promoting video lottery play at the casino.

**Gaming Floor & Admin:** The portion of Net Win used to reimburse gaming floor vendors (central system and game machine providers) and administer the Video Gaming Program (sometimes labeled "Lottery Administration").

**Capital Award:** Jake's 58 is not eligible for Capital Award.

---

### Distribution of Net Win per Legislation

| | Education Contribution | Agent Commission | | | | | Marketing Allowance | Gaming Floor & Admin | Capital Award |
|---|---|---|---|---|---|---|---|---|---|
| | | Operator | Purses | Breeders | NYRA Ops | NYRA Cap Exp | | | |
| All net win annually | 45.00% | 30.00% | 2.30% | 0.50% | 1.30% | 0.90% | 10.00% | 10.00% | 0% |

Source: New York State Gaming Commission



**Jake's 58 Hotel & Casino**
3635 Express Drive North
Islandia, NY 11749
www.jakes58.com

| Month | Credits Played | Free Play Allowance | Credits Won | Net Win | Avg Daily VGM's | Win/VGM per Day | Education Contribution | Agent Commission | Marketing Allowance | Gaming Floor & Admin | Capital Award |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| Apr-16 | | | | | | | | | | | |
| May-16 | | | | | | | | | | | |
| Jun-16 | | | | | | | | | | | |
| Jul-16 | | | | | | | | | | | |
| Aug-16 | | | | | | | | | | | |
| Sep-16 | | | | | | | | | | | |
| Oct-16 | | | | | | | | | | | |
| Nov-16 | | | | | | | | | | | |
| Dec-16 | | | | | | | | | | | |
| Jan-17 | | | | | | | | | | | |
| Feb-17 | $5,337,309 | $0 | $4,924,225 | $413,084 | 265 | $779 | $185,888 | $144,579 | $41,308 | $41,308 | $0 |
| Mar-17 | $93,894,467 | $0 | $86,864,892 | $7,029,575 | 290 | $782 | $3,163,309 | $2,460,351 | $702,958 | $702,958 | $0 |
| Total | $99,231,776 | $0 | $91,789,117 | $7,442,659 | 278 | $781 | $3,349,196 | $2,604,930 | $744,266 | $744,266 | $0 |
| | 0.00% | 92.50% | 7.50% | | | | 45.00% | 35.00% | 10.00% | 10.00% | 0.00% |

Fiscal Year 2016/2017

Distribution of Net Win:

### Definition of Terms

**Credits Played:** The amount of onscreen credits wagered on a video gaming machine (VGM). This amount includes Credits Played resulting from; (a) cash and vouchers inserted into a VGM, and (b) any Credits Won used to make a wager on a VGM.

**Free Play Allowance:** The amount of promotional free play included in Credits Played that is subsidized by the State through a reduction to Net Win.

**Credits Won:** The amount of onscreen credits won on a VGM (prize payout). Also includes any progressive jackpot liability due to players.

**Net Win:** The net revenues remaining after payout of prizes to players. (Credits Played less Credits Won) Net win is commonly referred to as "Hold" or "Net Machine Income".

**Education Contribution:** The portion of Net Win allocated to the State Education Fund for direct aid to education.

**Agent Commission:** The portion of Net Win paid to the casino operator as compensation for operating the gaming facility. Most operating expenses of the gaming facility are paid from the agent commission (including the horse racing subsidies), with the exception of the gaming floor itself, which is provided by the other vendors and paid for by the Lottery.

**Marketing Allowance:** The portion of the Net Win paid to the casino operator to finance the costs of advertising, marketing and promoting video lottery play at the casino.

**Gaming Floor & Admin:** The portion of Net Win used to reimburse gaming floor vendors (central system and game machine providers) and administer the Video Gaming Program (sometimes labeled "Lottery Administration").

**Capital Award:** Jake's 58 is not eligible for Capital Award.

### Distribution of Net Win per Legislation

| | Education Contribution | Agent Commission | | | | | Marketing Allowance | Gaming Floor & Admin | Capital Award |
|---|---|---|---|---|---|---|---|---|---|
| | | Operator | Purses | Breeders | NYRA Ops | NYRA Cap Exp | | | |
| All net win annually | 45.00% | 30.00% | 2.30% | 0.50% | 1.30% | 0.90% | 10.00% | 10.00% | 0% |

Source: New York State Gaming Commission