**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Counsel for the Adjusted Debtor and Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**HEARING DATE: Nov. 28, 2018**
**HEARING TIME: 2:00 pm**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION,<br><br>          Adjusted Debtor. | Chapter 9<br><br>Case No. 12-43503-CEC |
| JENNIFER TOMASINO, KEVIN MONTANO, RICHARD MEYER, and APRYL L. MEYER,<br><br>          Plaintiffs,<br><br>    -against-<br><br>INCORPORATED VILLAGE OF ISLANDIA, BOARD OF TRUSTEES OF THE VILLAGE OF ISLANDIA, DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE NORTH, and SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION,<br><br>          Defendants. | Adv. Proc. No. 18-1033-CEC<br><br><br>**REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION** |

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT…………………………………………………  1

II. ARGUMENT…………………………………………………………………..  2

    A.  Plaintiffs Fail To Show Any Genuine Issue Of Material Fact As To Whether Local Law 3-2017 Is The Result Of An Illegal Contract Or Unlawful Spot Zoning. …………...…………………………………………………..  2

    B.  Stephen Jones's Testimony is Inadmissible to Support Plaintiffs' Claims……………………………………………………………….........  6

    C.  Plaintiffs Waived The Argument That Local Law 3-2017 Is Null And Void For Lack Of Uniformity When They Failed To Address It In Their Complaint Or Amended Complaint…………………………………………..  9

    D.  Plaintiffs Do Not Show That They Are Entitled To A Permanent Injunction..  9

       1.  Plaintiffs Do Not Put Forth Facts Sufficient To Establish The Essential Element Of  Irreparable Harm…………………………………………..  10

       2.  Plaintiffs Do Not Even Address—Much Less Establish—How the Balance of Hardships Or A Public Interest Analysis Favors Them; Or Warrants A Permanent Injunction……………………………………………………….  16

III. CONCLUSION………………………………………………………………..  18

## **TABLE OF AUTHORITIES**

## **Cases**

*Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531 (1987)……………………………...11

*Asian Americans for Equal. v. Koch*, 72 N.Y.2d 121, 131 (1988)……………………………..5

*Bell Atlantic v. Twombly*, 550 U.S. 554 (2007)…………………………………………………...9

*Boryszewski v. Brydges*, 37 N.Y.2d 361 (1975)……………………………………………………16

*Cannon v. Murphy*, 196 A.D.2d 500 (N.Y. App. Div. 1993)………………………………….6

*Church v. Town of Islip*, 8 N.Y. 2d 254 (1960)……………………………………………...2

*Citizen to Save Minnewaska v. New Paltz Central School Dist.*,
95 A.D.2d 532 (N.Y. App. Div. 1983)…………………………………………………………2

*City of Buffalo v. Roadway Tr. Co.*, 303 N.Y. 453 (1952)…………………………………....14

*City of Los Angeles v. Lyons*, 416 U.S. 95 (1983)……………………………………………15

*City of New York v. 17 Vistas Associates*, 84 N.Y.2d 299 (1994)……………………………...2

*City of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 908 (S.D.N.Y.),
aff'd, 58 F.3d 35 (2d Cir. 1995)…………………………………………………………………13

*DePaolo v. Town of Ithaca*, 258 A.D.2d 68, 71 (N.Y. Sup. Ct. 1999)………………………2, 3

*eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 338 (2006)…………………….9, 10, 11, 16, 17

*Ford v. Reynolds*, 316 F.3d 351 (2d Cir. 2003)……………………………………………….11

*Holland v. Goord,* No. 05-cv-6295(MAT), 2012 WL 6652443
(W.D.N.Y. Dec. 20, 2012)…………………………………………………………………...8

Hygh v. Jacobs, 961 F.2d 359 (2d Cir. 1992)…………………………………………………..8

*In re Tomasino v. Bd. Of Tr. Of the Inc. Vill. of Islandia*, 08907/2016,
2017 N.Y. Misc. LEXIS 4635 (N.Y. Sup. Ct. Sept. 8, 2017)…………………………………4

*Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246 (S.D.N.Y. 1997)…………………………11, 15

*Los-Green, Inc. v. Weber*, 156 A.D.2d 994 (N.Y. Sup. Ct. 1989)……………………………...5

*Max & Co., Inc. v. Diner's Club Inc.*, 550 F.2d 505 (2d Cir. 1977)……………………………7

*Park West Galleries, Inc. v. Global Fine Art Registry, LLC*, Nos. 2:08-cv-12247, 2010 WL 987772 (E.D. Mich. March 12, 2010)……………………………………………………..7

*Pearlman v. Cablevision Sys. Corp.,* 10-CV-4992(JS)(GRB), 2015 WL 8481879 (E.D.N.Y. Dec. 12, 2015)……………………………………………………8

*Roach v. Morse*, 440 F.2d 53 (2d Cir. 2006)…………………………………………………..11

*Rodgers v. Vill. of Tarrytown*, 302 N.Y. 115 (1951)……………………………………………...5

*Rodriguez ex. rel. Rodriguez v. DeBuono*, 175 F.3d 227 (2d. Cir. 1999)……………………..11

*Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175 (E.D.N.Y. 2015)………………………………11

*Roundout Valley Cent. Sch. Dist. v. Coneco Corp.,* 321 F. Supp. 1d 469, 480 (N.D.N.Y. 2004)……………………………………………………………………………8

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)…………………………………………………15

*Save Our Forest Action Coal. v. City of Kingston*, 246 A.D.2d 217 (N.Y. App. Div. 1998)…..6

*Torres v. Cty. of Oakland*, 758 F.2d 147, 105 (6th Cir. 1985)…………………………………8

*Town of Bedford v. Vill. of Mount Kisco*, 33 N.Y.2d 178, 188 (1973)…………………………5

*Wein v. Comptroller*, 46 N.Y.2d 394 (1979)…………………………………………………..16

*Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7 (2008)…………………………9, 10, 11, 16

**<u>Statutes</u>**

N.Y. Const. art I., §9, cl. 1…………………………………………………………………18

N.Y. Tax Law § 671…………………………………………………………………………...18

Upstate New York Gaming Economic Development Act of 2013……………………………...5

**<u>Rules</u>**

Federal Rule of Bankruptcy Procedure 7008……………………………………………...9

Federal Rule of Bankruptcy Procedure 7015……………………………………………...9

Federal Rule of Bankruptcy Procedure 7026………………………………………………...8

Federal Rule of Bankruptcy Procedure 7056…………………………………………………...1

Federal Rule of Bankruptcy Procedure 9017……………………………………………7, 13

Federal Rule of Civil Procedure 15……………………………………………………….9

Federal Rule of Civil Procedure 26……………………………………………………….8

Federal Rule of Civil Procedure 56……………………………………………………….1

Federal Rule of Civil Procedure 8(a)……………………………………………………...9

Federal Rule of Evidence 701……………………………………………………………..7

## Law Review Articles

Ilya Somin, *Democracy, Foot Voting, and the Case for Limiting Federal Power*,
76 Montana L. Rev. 21 (2015)………………………………………………………………16

The Adjusted Debtor and Co-Defendant, Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB"), by and through its undersigned counsel, Eckert Seamans Cherin & Mellott, LLC, respectfully submits this Reply Brief in Further Support of its Motion for Summary Judgment pursuant to Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, and in support thereof, avers as follows:

## I.    PRELIMINARY STATEMENT

In their answering papers, Plaintiffs attempt to conjure up a set of "proven facts" predicated on evidence which simply does not exist or does not prove what Plaintiffs submit it does. Post-discovery, it is apparent that Plaintiffs do not possess the requisite evidence which, even if taken as true, shows that the Taxpayer Relief Agreement and Local Law 3-2017 were either the result of an illegal contract or unlawful spot zoning. Even so, regardless of the merits of their zoning claims, Plaintiffs have not established entitlement to a permanent injunction because they have not substantiated (1) standing to bring a claim for injunctive relief; (2) that they have suffered or will suffer irreparable harm; or (3) the balance of hardships and public interest analysis favors the imposition of a permanent injunction. Such an injunction would obviously devastate Suffolk OTB, as well as its creditors; the New York State Education Fund; and Suffolk County.

As explained further herein, Plaintiffs fail to create <u>any</u> genuine dispute of fact with regard to their claims; therefore, their claims for contract zoning, spot zoning, and injunctive relief should be dismissed.

## II.    ARGUMENT

**A.  Plaintiffs Fail To Show Any Genuine Issue of Material Fact As To Whether Local Law 3-2017 Is The Result Of An Illegal Contract Or Unlawful Spot Zoning.**

As explained herein, and in Defendant Delaware North's Reply Brief in Support of Its Motion for Summary Judgment ("Delaware North's Reply Brief"), Plaintiffs' claims of contract and spot zoning fail on their merits.

Plaintiffs do not establish any genuine question as to whether Local Law 3-2017 is contract zoning. "Zoning, being a legislative act, is entitled to the strongest possible presumption of validity and must stand if there was any factual basis therefor." *Church v. Town of Islip*, 8 N.Y. 2d 254, 259 (1960) (upholding a local law that contractually conditioned a zoning change on the landowner executing a restrictive covenant as to the amount of land available for buildings and as to foliage) (citing *Shepard v. Village of Skaneateles*, 300 N.Y. 115 (1949)). A local law constitutes impermissible contract zoning when the local legislature limits its sovereignty by entering into contracts that commit it to take a course of action in the future. *Church*, 8 N.Y. 2d at 259; *DePaolo v. Town of Ithaca,* 258 A.D.2d 68, 71 (N.Y. Sup. Ct. 1999) (upholding a local law passed as a result of a contract between the Town of Ithaca and Cornell University by which Ithaca did not commit itself to future legislative acts).

The cases Plaintiffs rely on are inapposite. *See, e.g., City of New York v. 17 Vistas Associates*, 84 N.Y.2d 299, 306 (1994) (invalidating a permit granted by the local government to a non-profit religious corporation because the city abandoned its due diligence and legislative process in exchange for the corporation setting up a fund to benefit the homeless); *Citizens to Save Minnewaska v. New Paltz Central School Dist.*, 95 A.D.2d 532, 534 (N.Y. App. Div. 1983) (striking down a resolution where Marriott and the local government entered into an agreement

wherein Marriott offered to pay 100% of the value of its would-be tax assessment if the local government passed the resolution and promised to take certain legislative action in the future). Here, the record reflects that no agreement was made or entered into between Delaware North and the Village in advance of any legislative determination.

In *DePaolo v. Town of Ithaca,* the court found that a local law, passed by the Town of Ithaca due to a contract between the Town and Cornell University, was not illegal contract zoning, because Ithaca did not commit itself to taking, or refraining from taking, any future legislative action. 258 A.D.2d 68, 694 N.Y.S.2d 235 (1999). The court in *DePaolo* explained:

> Respondent Town Board did not engage in illegal "contract zoning" by amending its zoning ordinance to accommodate respondent university's plan to implement a lake-source cooling project for its campus buildings in exchange for the university's granting the Town a 99-year license to use certain property as a public park, thereby allowing continued public access to the lake. **Nothing in its agreement with the university committed the Town to a specific course of action with respect to the zoning amendment** and, in fact, the Town expressly rejected language which could have arguably been so interpreted. While the university's grant of the license to the Town was conditioned upon its receipt of all approvals required for the project, including rezoning, **no provision in the agreement obligated the Town to issue such approvals or approve the university's rezoning application.**

*Id.* (emphases added).

Here, nothing in the record indicates that the Village ceded any legislative authority, nor does the Taxpayer Relief Agreement require the Board to take any legislative action. Plaintiffs themselves admit in response to Delaware North's Statement of Undisputed Material Facts that "[t]here is no provision of the [Taxpayer Relief Agreement] requiring the Board to take any legislative action." [Dkt. Nos. 62-1 and 76, ¶ 34].

The Board's decision to amend the zoning ordinance via Local Law 3-2017 was unanimous—evidence that it was truly in the best interests of the community. When the Board passed Local Law 3-2017, it considered a multitude of factors including: "[T]he character of the

community, the surrounding land uses, current zoning and master plan among other things." (Dorman Dep. 166:16–167:3, Oct. 19, 2018). No evidence in the record indicates that the Board committed itself to a specific future legislative act when it contracted with Delaware North, despite Plaintiffs' convoluted attempt to suggest otherwise.

Plaintiffs respond to the fact that the Taxpayer Relief Agreement was not executed until *after* the Board passed Local Law 3-2017 only by resorting to name-calling and putting forth unsubstantiated and unpled accusations. (*See e.g.*, Pls.' Br. in Opp. 23) ("Defendants' argument that Plaintiffs have not stated a zoning contract claim because there was no pre-existing contract that required the Village Board to adopt the Local Law is surely made with tongue in cheek and is a canard.").

In particular, Plaintiffs suggest that Mayor Dorman and the Village Board acted in contravention of Justice Ford's Short Form Order ("the Art. 78 Order") in the Article 78 Action (Pls.' Mem. In Opp. 26).  However, the Art. 78 Order vacated the permit the Village granted to Delaware North because the Court found that the permit did not comport with the Master Plan. *In re Tomasino v. Bd. of Tr. of the Inc. Vill. of Islandia*, 08907/2016, 2017 N.Y. Misc. LEXIS 4635, at *12–13 (N.Y. Sup. Ct. Sept. 8, 2017).  Contrary to Plaintiffs' contentions, the Art. 78 Order refers to "zoning and land use regulations being chiefly a matter of local concern and interpretation" and states that "[l]ocal standards, of course, may change over time." Short Form Order at 6. Therefore, the actions of the Village in enacting Local Law 3-2017 were a lawful and democratic response to the order, not actions in contravention of the Art. 78 Order as Plaintiffs suggest.

Plaintiffs further fail to show that any genuine question of material fact exists as to whether Local Law 3-2017 is considered spot zoning. Spot zoning is "the process of singling out a small

parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner or such property and the detriment of other owners." *Rodgers v. Vill. of Tarrytown*, 302 N.Y. 115, 123 (1951). The record reflects that the Village's Master Plan is not an immutable static document; it can be lawfully amended to reflect changing circumstances.[1] Even if Plaintiffs established, which they have not, that Local Law 3-2017 was in clear conflict with the comprehensive plan, the "obligation is support of comprehensive planning, not slavish servitude to any particular comprehensive plan." *Town of Bedford v. Vill. of Mount Kisco*, 33 N.Y.2d 178, 188 (1973). New York law does not even require that the comprehensive plan referenced in the spot-zoning test be in writing. *Los-Green, Inc. v. Weber,* 156 A.D.2d 994, 995 (N.Y. Sup. Ct. 1989). Mayor Dorman testified that the Board passed Local Law 3-2017 as part of such *a* plan; he testified at length that the Board considered a comprehensive analysis of various factors in its consideration to pass Local Law 3-2017. (Dorman Dep. 166:16–167:3).

Plaintiffs seem to assert that the Master Plan is the only potential comprehensive plan that could predicate the spot zoning standard; Attorney Borovina even went so far as referring to the Master Plan as the "Comprehensive Plan" without so defining it in Mayor Dorman's Deposition in an attempt to conflate the Master Plan with his altered notion of the legal test for *a* comprehensive plan. (Dorman Dep. 134: 23–25).[2]   In fact, the Board passed Local Law 3-2017

---

[1] Notably, when the Master Plan was introduced in 1994, VLT facilities were illegal as a matter of New York State law, and were *a priori* precluded from any legal plan put into place by a local government such as the Village. The Upstate New York Gaming Economic Development Act of 2013 permitted the establishment of VLT Facilities in Nassau and Suffolk County, allowing the local governments to consider VLT Facilities as a part of a comprehensive plan for the first time.

[2] Plaintiffs purposefully confused the record to aid their agenda by materially misrepresenting this testimony. Plaintiffs stated: "Mayor Dorman also testified that he was not familiar with the 1995 Master Plan." (Pls.' Mem. In Opp. 16) (citing Dorman Dep. 134: 23–25). Those lines of Mayor Dorman's deposition actually read: "Q: Are you familiar with a Comprehensive Plan that was prepared in 1994? A: Not offhand, no." Attorney Borovina never defined the Master Plan as a "Comprehensive Plan." Later in the deposition, when the questioner described the Master Plan as the Master Plan, Mayor Dorman readily testified that he considered the Master Plan when reviewed Local Law 3-2017. (Dorman Dep. 166:22–167:3). *See also Asian Americans for Equal. v. Koch*, 72 N.Y.2d 121, 131 (1988) (A well-considered plan need not be contained in a single document; indeed, it need not be written at all. The court may satisfy itself that

as part of a comprehensive plan calculated to serve the interests of the general welfare of the community; and therefore, Local Law 3-2017 is not spot zoning.

For these reasons and the reasons set forth in Defendant Delaware North's Brief in support of its Motion for Summary Judgment, the claims against Suffolk OTB for illegal contract and unlawful spot zoning should be dismissed.

### B.  <u>Stephen Jones's Testimony Is Inadmissible To Support Plaintiffs' Claims.</u>

Plaintiffs improperly rely on their purported land use and zoning "expert," Stephen Jones, to fill the gaps in their arguments.[3] As they say, "[a]ll the factors identified in Courts in *Save Our Forest Action Coal.* and *Cannon* in determining whether the Local Law is an unlawful spot are discussed in the declaration of Stephen M. Jones submitted by Plaintiffs in opposition to the motions." (Pls.' Mem. In Opp. 28). Jones considered the factors identified by the courts' precedent and came to the improper *legal conclusion* that the "enactment of [Local Law 3-2017] constituted spot zoning." (Jones Decl. ¶ 12). Attorney Borovina paid Jones to review the documents, gather facts, and provide him and the Plaintiffs with a *legal opinion and conclusions of law* that the Local Law 3-2017 is illegal. Jones opened his Declaration, swearing—in the first paragraph—that:

> Plaintiffs have retained me to give my *professional* opinion whether a certain amendment to the Incorporated Village of Islandia ("Village")'s zoning code was adopted in accordance with the Village's Master Plan and *the requirements imposed upon all zoning jurisdictions in adopting local laws regulating the uses of land located within their respective jurisdictions through the exercise of their zoning powers*.

Jones Decl. ¶1.

---

the municipality has a well-considered plan and that authorities are acting in the public interest to further it by examining all available and relevant evidence of the municipality's land use policies.").

[3] Accordingly, Delaware North filed Motions to Strike the Declarations of Neil Munro and Stephen M. Jones as improper on November 15, 2018 [Dkt. No. 80], and Suffolk OTB filed a notice of joinder regarding these motions [Dkt. No. 82]. Any argument made herein regarding the substance of either of these declarations does not waive any objection as to the use of these declarations as improper.

However, Jones is not an attorney, he is not licensed to practice law in the State of New York (or any of her sister states), and he holds no degree in the study of law. (Jones Curriculum Vitae 2, attached as Exhibit A).[4] He is not qualified to opine as to legal ramifications of any of his "expert" opinions.[5]

Federal Rule of Evidence 701, incorporated to this proceeding through Federal Rule of Bankruptcy Procedure 9017, prohibits a non-attorney layperson from providing an opinion as to legal conclusions. Fed. R. Civ. P. 701; Fed. R. Bankr. P. 9017; *Max & Co., Inc. v. Diner's Club Inc.*, 550 F.2d 505, 509–510 (2d Cir. 1977). "Legal opinions, when offered by a non-lawyer lay witness, are both "incompetent and unpersuasive." *Park West Galleries, Inc. v. Global Fine Art Registry, LLC,* Nos. 2:08-cv-12247, 2010 WL 987772, at *2 (E.D. Mich. March 12, 2010) (quoting *U.S. v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009). "The problem with [lay witness] testimony

---

[4] Jones holds a Bachelor of Arts in Liberal Arts/Geology and a Master of Arts in Urban Studies. (Jones Curriculum Vitae 2, Exhibit A).

[5] The statements Jones makes in his Declaration that required him to attempt a legal analysis or make a legal opinion are almost too numerous to count. Here are a few notable examples: He began his Declaration proclaiming that Attorney Borovina hired him to perform a legal analysis and render a legal opinion as to the Local Law 3-2017. (Aff. ¶ 1). He confirmed this objective, reiterating in Paragraph 11 that the Plaintiffs hired him to render a legal opinion regarding Local Law 3-2017, which "was adopted in accordance with the Village's Comprehensive Plan and the standards imposed upon all local zoning jurisdictions. . ." (*Id.* ¶ 11). In preparing for his opinion, he reviewed certain provisions of the Village Code, the standards used for granting special permits and Local Law 4-2008, Justice Ford's Order; the Local Law, the Taxpayer Relief Agreement, and the Revised Taxpayer Relief Agreement, among other things. (*Id.* at ¶ 12). He "focused on" "what actions [the Village Board] was required to take." (*Id.* at ¶ 18). His legal opinion is "[t]he Local Law is other than part of the well-considered and comprehensive Master Plan the Village adopted in 1995 and does not serve the general welfare of the Village's residents but rather the interests of a single entity" and "the Local Law also fails because it was not made uniform, as it was required to be, with respect to each class or kind of buildings throughout the OI District." (*Id.* at ¶ 24). He also interpreted law: "[f]rom my reading of Section 177-71. . . " (*Id.* at ¶ 24) (*see also Id.* at ¶¶ 27–28). He testified: "I will first give my understanding what the Local Law permits. . ." (*Id.* at ¶ 29). He states the "legal" opinion that "from the documents I have reviewed, it is also clear to me . . . that the Local Law is a 'spot zone.'"(*Id.* at 30). He once again interprets legislation in Paragraph 33 of his Declaration and compares the conditions of Local Law 3-2017 with the permit in Paragraph 34, even going as far to compare the laws in Paragraph 41. By the end of his Declaration, Jones, goes as far as to make a legal determination that the removal of certain amenities from the Hotel when the VLT Facility opened changed the legal designation of the building itself. (*Id.* at ¶ 58 "The removal of these 'customary and incidental' facilities from the hotel converted the hotel from being the primary use of the Property to an accessory use to the gaming facility.") He continues and offers his "legal opinion" that the Local Law 3-2017 is *illegal* because it is not uniform. (*Id.* at ¶ 62–63). He also opines on the legislators' intent. (*See e.g.*, *Id.* at ¶¶ 65; 70).

containing legal conclusions is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury." *Torres v. Cty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

Even if Jones was an attorney licensed in New York, he would still be prohibited from testifying as to legal conclusions. "It is axiomatic that an expert is not permitted to provide legal opinions, legal conclusions, or interpret legal terms; those roles fall solely within the province of the court." *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp. 2d 469, 480 (N.D.N.Y. 2004); *Hygh v. Jacobs*, 961 F.2d 359, 363–64 (2d Cir. 1992); *Pearlman v. Cablevision Sys. Corp.*, 10-CV-4992(JS)(GRB), 2015 WL 8481879, at *8 (E.D.N.Y. Dec. 12, 2015). Jones' legal conclusion that Local Law 3-2017 is spot zoning is solely within the province of this Court. Ignoring Jones' inadmissible legal conclusions, Plaintiffs fail to establish a genuine question of material fact that Local Law 3-2017 is illegal spot zoning.

Striking Jones' copious legal conclusions, the remainder of Jones' testimony is inadmissible because Plaintiffs also did not disclose him as a fact witness pursuant to Fed. R. Civ. P. 26 and Fed. R. Bankr. P. 7026. [Dkt. Nos. 80 and 82]. When a party fails to disclose a witness as required under Fed. R. Civ. P. 26, the party is prohibited from using that witness absent showing that their failure was substantially justified or harmless. *Holland v. Goord*, No. 05-CV-6295(MAT), 2012 WL 6652443, at *2 (W.D.N.Y. Dec. 20, 2012).

## C. <u>Plaintiffs Waived The Argument That Local Law 3-2017 Is Null And Void For Lack Of Uniformity When They Failed To Address It In Their Complaint Or Amended Complaint.</u>

Plaintiffs did not plead that Local Law 3-2017 is null and void for lack of uniformity in their Complaint, Amended Complaint, or any subsequent filing until they raised this argument for the first time when they filed their Memorandum in Opposition on November 12, 2018.

Federal rules require that plaintiffs plead their claims in a "'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007); Fed. R. Civ. P. 8(a) (incorporated by Fed. R. Bankr. P. 7008). When Plaintiffs failed to assert the lack-of-uniformity argument in their pleadings and filings until now, they have deprived Suffolk OTB and the other Defendants of fair notice of the foundation of their claims.

Pursuant to Fed. R. Civ. P. 15(a), Plaintiffs were entitled to amend their Complaint once as a matter of course within 21 days from service. Fed. R. Civ. P. 15(a) (incorporated in this Adversary Proceeding through Fed. R. Bankr. P. 7015). Federal Rule of Civil Procedure 15 required the Plaintiffs to obtain the opposing party's consent or leave of court to otherwise amend its pleading; Plaintiffs did not utilize either option. Only now—*after the close of discovery* on October 24, 2018—do Plaintiffs assert this new argument. Plaintiffs deprived Suffolk OTB of the opportunity to take meaningful discovery as to the merits of these contentions. Suffolk OTB will be severely prejudiced and its due process rights will be violated if the Plaintiffs are permitted to assert this claim for the first time at this stage.

### D. <u>Plaintiffs Do Not Show That They Are Entitled To A Permanent Injunction.</u>

A party seeking a permanent injunction must demonstrate all of the following: (1) that the seeking party suffered irreparable harm; (2) that remedies at law are inadequate to compensate the party for its injuries; (3) that a remedy in equity is warranted considering the balance of the hardship between the parties; and (4) that a permanent injunction would not disserve the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 21, 32 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs fail to demonstrate any of these factors.

### 1. *Plaintiffs Do Not Put Forth Facts Sufficient To Establish The Essential Element Of Irreparable Harm.*

Despite Plaintiffs' last-ditch attempt to establish any injury which would substantiate the imposition of a permanent injunction, Plaintiffs have again asserted only speculative, anecdotal allegations of adverse impact on others insufficient to show that they suffered or will suffer any present or future injury. As demonstrated by Plaintiffs' declarations and the affidavits included with Plaintiffs' Brief in Opposition, Plaintiffs attempt to manifest their generalized and subjective fear of crime and casinos into allegations of actual harm by conjuring together "evidence" which does not actually prove any fact of harm or causation.[6] Although Suffolk OTB may be sympathetic to Plaintiffs' fears, Plaintiffs have not suffered any *actual* harm, and Plaintiffs are unable to establish that any *actual* future harm is likely to occur from the VLT Facility.

As previously explained in Suffolk OTB's principal brief in support of its Motion for Summary Judgment, permanent injunctions are granted only where a plaintiff establishes, *inter alia*, that they will suffer irreparable injury in the absence of such an injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("[A] plaintiff seeking a permanent injunction must… demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (Plaintiffs seeking injunction must "demonstrate that

---

[6] Plaintiffs' allegations contained in Richard Meyer's Affidavit are mostly inadmissible hearsay based upon police reports filed with Plaintiffs' Brief in Opposition to Summary Judgment. ("Police Reports"). In responding to the substance of these Police Reports, Suffolk OTB does not waive its objections to the Police Reports, namely that they were never authenticated as proper evidence and were submitted after the clsoe of discovery, and the Court should not consider them in deciding this Motion. Tellingly, *none* of the incidents included in the Police Reports Plaintiffs chose to attach to Richard Meyer's Affidavit occurred on Dawson Court, where Plaintiffs live.

irreparable injury is likely in the absence of an injunction.").[7] Despite Plaintiffs' effort to put forth "evidence" of such harm, they have failed to create a triable issue.

"[A] permanent injunction is a proper remedy only where it will eliminate **existing or presently threatened injuries**." *Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246, 256 (S.D.N.Y. 1997) (quoting *Socialist Workers Party v. Attorney Gen. of the United States*, 642 F.Supp. 1357, 1425 (S.D.N.Y.1986)) (emphasis added). To show irreparable injury, Plaintiffs must establish that the injury alleged "be one requiring a remedy of more than mere money damages." *Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003); *see also Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) ("To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted").

Plaintiffs' declarations, as well as their attachment of articles and criminal incident reports in an attempt to establish that such harm is likely, are both irrelevant and do not serve to demonstrate any *increase* in the rate of crime due to the presence of the VLT Facility (or that such harm is likely to affect Plaintiffs). For example, Plaintiffs attach an article in their citation to an isolated incident where a couple conspired and attempted to rob a patron of the VLT Facility. This case involved a corrupt police officer who was already part of the community before the VLT Facility opened. ("Prosecutors: Nassau Police Officer; Wife Plotted to Rob Casino Patron," attached to A. Meyer Aff.). Plaintiffs failed to point out that, though one cop and his wife went

---

[7] Note that case law discussing preliminary injunctions are also generally applicable to any analysis regarding permanent injunctions. *See e.g.*, *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 (1987) (finding no significant distinction between cases discussing permanent injunctions from preliminary injunctions, stating "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *Rossito-Canty v. Cuomo*, 86 F. Supp. 3d 175, 201 (E.D.N.Y. 2015) ("The equitable principles and scope of review for preliminary relief and permanent injunction remain the same."); *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999) (a showing of irreparable harm "is required for the imposition of any injunctive relief, preliminary or permanent.").

rogue, the corrupt police offer was apprehended as a result of the diligent efforts of a team of upstanding law enforcement officers who ensured that no individuals were harmed. *Id.*

By way of further example, Plaintiffs cite to an incident where a hotel guest was arrested on weapons charges for possessing an AR-15 in the VLT Facility.[8] (A. Meyer Aff. ¶ 12).  The guest had lawfully purchased the weapon in Pennsylvania and had, in contravention of New York law, unlawfully possessed it in his hotel room.  Security personnel at the hotel, having found the weapon disassembled in his room, stated that although he broke New York state laws by possessing the weapon, the guest "did not intend to use the weapon to cause harm." ("Cops: AR-15 at Jake's 58," attached to A. Meyer Aff.)  Nonetheless, this incident itself does not substantiate that there has been an increase in criminal activity, nor does it show that any actual harm has been effected on any of the Plaintiffs (or anyone else, for that matter).  Although Suffolk OTB is sympathetic to the general fears Plaintiffs have of weapons and crime, such fears have not manifested into any actual or likely future harm.

Importantly, incidents of actual or attempted criminal activity themselves do not establish an increase in crime rates generally, and do not show that, even if there was an actual increase in crime, the existence of the VLT Facility caused such increase.  Plaintiffs do not suggest that the Village was devoid of any criminal or drug-related activities prior to the opening of the VLT Facility—no such area is so fortunate. The existence of criminal incidents itself does not prove that crime rates have *increased* from prior levels, or that any increase was caused by the VLT

---

[8] Plaintiffs' allegation that this incident is akin to the mass shooting which took place in Las Vegas in 2017 is not only overly-sensationalized as it applies to this case, but is also irrelevant and inflammatory in an attempt to bring Plaintiffs' subjective fears to life.  The Las Vegas shooting, which took place across the country, was a senseless, tragic event caused by a deranged individual.  This tragedy of the Las Vegas shooting, however, does not suggest that the existence of the Mandalay Bay, MGM Resorts Hotel (where the Las Vegas shooting took place) was responsible for the acts of this individual, and there is no basis to enjoin future operations.

Facility.  In fact, crime in the Village is sparse.  Plaintiffs' own witness, Neil Munro, himself admitted that "[t]he Village has no police department and does not need one."  (Munro Aff. ¶ 8(c).)

Moreover, incident reports of purported crimes are not actual evidence of the *fact of* crime, nor can they be used to demonstrate an increase in crime levels.  Plaintiffs' attachment of various incident reports of alleged criminal activity do not establish that Plaintiffs will be subject to irreparable harm in the form of criminal activity, nor that crime rates have increased.[9]

Recognizing they have not suffered injury regarding the value of their homes, Plaintiffs also contend that it is not "necessary for Plaintiffs to quantify the diminution in value of their homes on account of the proximity of their homes to the gaming facility at the Property."  (Pls.' Brief. In Opp. 38.)  This statement is misleading. As explained by New York District Courts, "[q]uantifiable harm is, of course, not a prerequisite to irreparable harm… **Nevertheless, the [plaintiff] is required to demonstrate** how [d]efendants' plan will ***actually cause*** the [harm]." *City of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 908, 927 (S.D.N.Y.), *aff'd*, 58 F.3d 35 (2d Cir. 1995) (emphases added). Accordingly, Plaintiffs are not charged to show irreparable harm by way of proving the amount of the diminution in value of their homes, but they must show that the homes *actually did* decrease in value (or that they have suffered some other type of actual harm). Plaintiffs do not set forth any fact to show such a decrease other than the improperly submitted testimony of their "expert."

Further recognizing that they have no proven fact to show any diminution in the value of their homes, Plaintiffs, at the last hour, put forth the opinion(s) of Stephen Jones[10] to support their

---

[9] To the extent Plaintiffs claims of increased crime rates rests on the 2015 and 2016 Police Reports summary labeled "Reported Criminal Incidents at Jake's 58," it should be noted that Jake's 58 did not exist until 2017.  Moreover, they are inadmissible as unauthenticated business records. Fed. R. Bankr. P. 9017 (incorporating F.R.E. 800, *et. seq.*).

[10] As stated previously herein, Suffolk OTB contends that Stephen M. Jones' declaration amounts to improper expert opinion testimony from a witness who was not disclosed nor identified as an expert.  By substantively discussing Jones' testimony, Suffolk OTB waives no such objection to the admissibility of this testimony. Additionally, Mr. Jones testified that the mere perception of crime in an area can diminish property values. (Jones Decl. ¶ 21). However,

otherwise unfounded contention that the proximity of Plaintiffs' homes to the VLT Facility "can and will diminish the value of neighboring residential uses of land."[11] (Pls.' Mem. In Opp. 39). Plaintiffs have not shown otherwise any actual depreciation. (*See* Suff. Br. in Supp. of MSJ 17–18, 23–25.)

Additionally, Plaintiffs claim in their Amended Complaint that their children have been exposed to "fearful life-threatening and otherwise severe felonious criminal conduct, immoral conduct, and child-endangerment attributable to the Hotel's use as a gaming facility." (Am. Compl., ¶ 84.)   Post-discovery, Plaintiffs, who are unable to substantiate these claims and show any such actual injury, now suggest that their entitlement to a permanent injunction "is not contingent on whether they or their children actually witnessed or were the victims of such criminal activity," analogizing that "[o]ne does not have to witness or be a victim of a crime in Central Park to know that it is unsafe to be in the Park after hours."[12] (Pls.' Mem. In Opp. 39.)

Although Plaintiffs are correct that one does not have to be the victim of crime to know to avoid potentially unsafe areas in a general sense, unfortunately for Plaintiffs, one *does* have to be subject to irreparable injury in order to obtain a permanent injunction, and such irreparable injury

just like Plaintiffs' argument that Local Law 3-2017 is void for lack of uniformity, Plaintiffs argue that the mere perception of crime diminished their property values for the first time in their Memo in Opposition and, for the same reasons, are prohibited from obtaining relief thereupon. Even if, *in arguendo*, Plaintiffs are permitted to argue that their home values were diminished because of the perception of crime in the area, Plaintiffs bring no evidence as to an established perception of increased crime or that any such perception, if it existed, actually diminished their property values.

[11] Plaintiffs' citation to *City of Buffalo v. Roadway Tr. Co.* is misguided. 303 N.Y. 453, 454, 104 N.E.2d 96 (1952). *City of Buffalo*, which was decided nearly seven decades ago, involved a dispute over the use of property as an industrial truck and freight facility.  The property in the case, used previously as a vehicle garage, was in an area that was previously zoned for commercial use. Over time, the area in which property sat was rezoned as residential, but allowed for the garage's use to continue as a previous, non-conforming commercial use which could later be changed to "any more restrictive use."  The court found that because the property's new use as a truck and freight facility, with operations occurring 24 hours a day with numerous tractor trailers arriving and departing, now amounted a heavy industrial use (versus simply commercial use), and as such,  the new use was not "more restrictive" than the previous non-conforming, commercial use and was therefore unlawful. This case is inapposite to the circumstances here, where the zoning code itself was changed by Local Law 3-2017 to expand upon use in an area that was already zoned for office/industrial, and not residential, use, with no similar "less restrictive" language present in the zoning code.

[12] Plaintiffs' analogy to crime in Central Park is erroneous, as no one has suggested that a permanent injunction should cause Central Park to close predicated on any level of crime that occurs there.

must rise above hypothetical speculation.[13] In order to obtain injunctive relief, Plaintiffs must show that "on the facts of their case, the failure to issue an injunction would ***actually cause* irreparable harm**." *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (emphasis added). "[An] applicant for [an] injunction **must establish *more than a mere possibility* of irreparable harm, rather, it must show that irreparable harm *is likely to occur*.**" *Int'l Paper Co. v. Suwyn*, 966 F. Supp. 246, 256 (S.D.N.Y. 1997) (citing *Lumex, Inc. v. Highsmith*, 919 F.Supp. 624, 628 (E.D.N.Y.1996)) (emphasis added). Plaintiffs have failed to do so.

As explained in detail in Suffolk OTB's principal brief, Plaintiffs do not that show any irreparable injury was suffered, or that there is a likely threat of future injury. Permanent injunctions are equitable remedies that are "unavailable absent a showing of irreparable injury." *City of Los Angeles v. Lyons*, 416 U.S. 95, 111 (1983). Plaintiffs fail to meet the standard for a permanent injunction when they fail to show "any real or immediate threat that the plaintiff will be wronged again." *Id.* at 111 (1983) (internal quotation omitted). Anecdotal evidence and examples of subjective fear do not establish that the Plaintiffs have suffered irreparable harm or will continue to suffer such harm in the future in the absence of an injunction.[14] *See Winter*, 555 U.S. at 21, 32; *eBay Inc.*, 547 U.S. at 391.

Finally, Plaintiffs' contention that in New York, private property owners have standing and right to an injunction to enjoin the *unlawful use* of property under the zoning code does not apply

---

[13] Additionally, Plaintiffs' Amended Complaint alleges that the VLT Facility "exposed" them and their children to crime. (Am. Compl. ¶ 84).

[14] Plaintiffs are demonstratively unhappy with the ramifications of the Board *legally* passing Local Law 3-2017, but they are not without recourse to change their circumstances. First, as Suffolk OTB expressed in its principal brief in support of its Motion for Summary Judgment, there are numerous efforts that Plaintiffs could take—and that Plaintiffs have indeed suggested themselves—that could mitigate the harm they purport to suffer. (Suff. Br. in Supp. of MSJ 21–23). Second, Plaintiffs are always entitled to express their dissatisfaction with the lawful exercise of the Board's legislative authority by voting with their feet and moving to an area where the local legislature is more aligned with their objectives. *See* Ilya Somin, *Democracy, Foot Voting, and the Case for Limiting Federal Power*, 76 MONTANA L. REV. 21 (2015) (discussing the value and efficacy of moving in response to disagreement with local governments' lawful legislative acts as a democratic tool).

here, as the VLT Facility's gaming use is explicitly *lawful* pursuant Local Law 3-2017.[15] Plaintiffs do not otherwise establish that they do indeed possess standing because they have been unable to show that they have suffered any harm which can be alleviated by an injunction.[16]

### 2.  Plaintiffs Do Not Even Address—Much Less Establish—How The Balance Of Hardships Or A Public Interest Analysis Favors Them; Or Warrants A Permanent Injunction.

In addition to Plaintiffs' failure to establish the requisite element of irreparable harm, even if such harm existed, Plaintiffs have not shown how the balance of equities favors them in order to sustain the imposition of a permanent injunction.  In fact, Plaintiffs wholly fail to even address two of the key inquiries that comprise the permanent injunction analysis: (1) whether, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (2) that the public interest would not be disserved by a permanent injunction.[17] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (discussing the last two elements of the permanent injunction analysis).  Plaintiffs' avoidance of the balance of hardships and public interest analysis is particularly telling—they are not addressed by Plaintiffs because both undeniably favor Suffolk OTB and show that a permanent injunction is not warranted.

---

[15] Plaintiffs fail to rebut Suffolk OTB's argument that they lack standing. Plaintiffs' citation to *Boryszewski v. Brydges*, 37 N.Y.2d 361, 372 N.Y.S.2d 623, 334 N.E.2d 579 (1975) is inapplicable to the issue of standing in this case.  In *Boryszewski*, the court held that a citizen taxpayer may maintain an action "to test the constitutionality of a State statute authorizing the expenditure of State moneys." The case involved a taxpayer suit at a time where a prior law provided that courts lacked power to interfere with the acts of another department of government, except to determine the rights of the parties and that a taxpayer's interest in state monetary expenditure. The court found that therefore, the injury was not sufficiently direct or immediate for that party to be aggrieved.  The case "did not call for the recognition of a new constitutional right of standing, but rather the abandonment of an old constitutional impediment to standing in these cases." *Wein v. Comptroller*, 46 N.Y.2d 394, 397, 386 N.E.2d 242, 243 (1979) (finding *Boryszewski* to be superseded by statute, because that state law now provides a means for citizen taxpayer suits against **an officer or employee of the state who has cause wrongful expenditure, misappropriation or illegal disbursement of state funds or property**). No such situation is present here.

[16] *See* Suffolk OTB's Brief in Support of its Motion for Summary Judgment 27–28.

[17] Accordingly, by failing to address these elements, any such argument by the Plaintiffs pertaining to the balance of hardships and public interest analysis are arguably waived for purposes of this Motion.

In their Amended Complaint, Plaintiffs alleged that an injunction would not impose a hardship on Suffolk OTB, as Suffolk OTB "is not the owner of the Premises, made no or insubstantial investment in the Premises' proposed use as the VLT Facility, and would still have the right and ability to exist and do business by relocating its operations elsewhere in Suffolk County." (Am. Compl. ¶ 89).  This version of the facts is outright false. (*See* Gazes Aff.). It is undeniable that Suffolk OTB would suffer immense hardship if the Court grants an injunction.

As explained in detail in Suffolk OTB's principal brief, the injunction would force Suffolk OTB to close its doors at the VLT Facility in the Village, which would require Suffolk OTB to write off over $44 million ($44,000,000) that it has expended to open the VLT Facility.  This would have devastating consequences for Suffolk OTB's Confirmed Chapter 9 Plan.  Forcing relocation would require Suffolk OTB to not only re-enter and complete negotiations for opening another facility, but would halt all revenues for Suffolk OTB—revenues on which numerous bankruptcy creditors rely on under its confirmed Chapter 9 Plan. (Gazes Aff. ¶ 6.) Through October 2018, Suffolk OTB has allocated over $4.6 million ($4,600,000) in distributions to its Class 4 unsecured creditors; if the injunction is granted, Suffolk OTB is unable to satisfy those creditors and perform as promised under the Confirmed Plan. (Gazes Aff. ¶ 6.)

In addition to the devastating consequences to the Confirmed Plan, the permanent injunction would result in incredible harm to the community.  Due to lost revenue, Suffolk OTB would have to lay off almost two hundred (200) local individuals it employs.  (Gazes Aff. ¶6.) The loss of Suffolk OTB revenue will also force Suffolk OTB to cease contributions to the New York State Education Fund, which has received $120,848,925 in surcharges from the VLT Facility as of September 2018. (Gazes Aff. ¶ 7.)  Finally, Suffolk County's guaranteed benefit of at least $13 million ($13,000,000) during the first ten years of the VLT Facility's operation in the Village

will be lost.  With the VLT Facility currently in place, Suffolk OTB is on pace to meet this obligation and even substantially exceed it—but with forced relocation, Suffolk County will be forfeiting this financial benefit for months, if not years, or entirely. (Gazes Aff. ¶ 8.)

Additionally, the economic benefit the VLT Facility brings to the community will necessarily cease.  (Gazes Aff. ¶ 6.)  An injunction stands to chill new businesses from developing or investing in the Village and its community, in fear that the new business too, like Suffolk OTB, will be forced out by a few dissenting residents; whereas, maintaining the status quo supports confidence in the potential investments in the community and demonstrates that the Village is able to sustain commercial progress. (Gazes Aff. ¶6.)  Finally, the existence of the VLT Facility is aligned with New York state policy, as expressed in the Bill of Rights of the New York Constitution and the New York Tax Law, which promotes gambling as a means to provide for the public good.  N.Y. Const. art. I, § 9, cl. 1 (providing for the existence of legislature-approved lotteries to support education in the state); N.Y. Tax Law § 671 (Consol. 2018) (providing the state to withhold and tax lottery winnings for the public good).

Even if Plaintiffs were able to articulate any irreparable harm they suffer, which, as explained *supra*, they cannot do, the balancing of hardships and public interest analysis clearly demonstrate that the equitable relief of a permanent injunction is not warranted in this case. Plaintiffs' assertion that "[t]he balancing of equities factors the issuance of the injunction" because of "Plaintiffs['] … substantial equitable interest in the public, social, and private benefits" associated with the Master Plan are simply not supported by the facts at issue. (Am. Compl. ¶ 92.) The consequences of a permanent injunction closing the VLT Facility would affect the financial, social, and public interests of hundreds of businesses and individuals and thousands of members of the community as a whole.  The interests of Suffolk OTB, Suffolk OTB's creditors, Suffolk

County, hundreds of those employed through operation of the VLT Facility, and members of the community who benefit from monthly contributions to educating children certainly outweigh the speculative allegations of fear Plaintiffs assert they are in desperate need of protection from, particularly when Plaintiffs cannot establish that they have suffered any irreparable harm or are likely to suffer such harm in the future.

### III.    <u>CONCLUSION</u>

Once again, the Plaintiffs are unable to proffer evidence to suggest that a genuine question of material fact exists regarding their claims.

In their desperate attempt to save their claims, Plaintiffs impermissibly cite to evidence submitted after the close of discovery and rely almost entirely on improper affidavit testimony of purported, but unqualified, "experts." In addition to the fact that Plaintiffs have not established they will succeed on the merits of their two zoning claims, they point to no admissible evidence that they have actually suffered or will suffer any irreparable injury, or that legal remedies are insufficient to make them whole.

Finally, Plaintiffs cannot show, and do not even attempt to suggest, that their subjective fears and interests outweigh the devastating hardships Suffolk OTB, its creditors, Suffolk County, the hundreds employed at the VLT Facility, and members of the local community will suffer, and the numerous negative ramifications to the public and interests of New York State if such an injunction were granted. Plaintiffs therefore cannot prove that a genuine question exists to challenge the legality of Local Law 3-2017, or that they are entitled to injunctive relief, and therefore, their claims necessarily fail.

**WHEREFORE**, Suffolk Regional Off-Track Betting Corporation respectfully requests that this Court grant its Motion for Summary Judgment.

Dated: White Plains, New York
      November 19, 2018

Respectfully submitted,


**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: */s/ Christopher F. Graham, Esq.*
    Christopher F. Graham, Esq.
    Sarah H. Morrissey, Esq.

    10 Bank Street, Suite 700
    White Plains, New York 10606
    (914) 949-2909
    cgraham@eckertseamans.com
    smorrissey@eckertseamans.com

*Attorneys for the Adjusted Debtor and Co-Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SUFFOLK REGIONAL OFF-TRACK<br>BETTING CORPORATION,<br><br>                  Adjusted Debtor. | Chapter 9<br><br>Case No. 12-43503-CEC |

| | |
|---|---|
| JENNIFER TOMASINO, KEVIN MONTANO,<br>RICHARD MEYER, and APRYL L. MEYER,<br><br>               Plaintiffs,<br><br>   -against-<br><br>INCORPORATED VILLAGE OF ISLANDIA,<br>BOARD OF TRUSTEES OF THE VILLAGE<br>OF ISLANDIA, DELAWARE NORTH<br>ISLANDIA PROPERTIES, LLC, a/k/a<br>DELAWARE NORTH, and SUFFOLK<br>REGIONAL OFF-TRACK BETTING<br>CORPORATION,<br><br>               Defendants. | Adv. Proc. No. 18-1033-CEC<br><br><br>**CERTIFICATE OF SERVICE** |

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing REPLY BRIEF IN FURTHER

SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF SUFFOLK REGIONAL OFF-

TRACK BETTING CORPORATION was served upon all parties via ECF on this 19th day of

November, 2018.

Dated: White Plains, New York
       November 19, 2018

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: */s/ Christopher F. Graham, Esq.*
    Christopher F. Graham, Esq.
    Sarah H. Morrissey, Esq.

    10 Bank Street, Suite 700
    White Plains, New York 10606
    (914) 949-2909
    cgraham@eckertseamans.com
    smorrissey@eckertseamans.com

    *Attorneys for the Adjusted Debtor and Co-Defendant*
    *Suffolk Regional Off-Track Betting Corporation*